Williams vs. Williams.

WILLIAMS vs. WILLIAMS.

PRESUMPTION AS TO MARRIAGE. *(1) Presumption where illicit cohabitation at some period is shown. (2) Case stated.*

1. A cohabitation illicit in its origin is presumed to have continued to be of that character, unless a subsequent actual contract of marriage is proved; and while such proof (in an action to establish a right of dower) may be by circumstances, these must be such as to exclude the inference or pre-

sumption that the former relation continued, and satisfactorily show that it had been changed into actual matrimony by mutual consent.

2. In an action for dower, where there was evidence from which the jury might have found that when the marriage ceremony was solemnized between plaintiff and the deceased, plaintiff was the wife of another man, though such disability was removed some years before the death of such deceased, and that, from the time of such ceremony until such death, the alleged husband and plaintiff cohabited together and publicly acknowledged each other as husband and wife, it was error to refuse instructions asked by defendant, to the effect that if the jury found that plaintiff, at the time of such ceremony, was the wife of another man, and that the alleged husband spoke of and introduced her as his wife, and cohabited with her as such, because of such ceremony or pretended marriage, *and not because of any actual marriage contracted after the disability was removed*, then she was not entitled to dower.

APPEAL from the Circuit Court for *Kenosha* County.

The case is thus stated by Mr. Justice TAYLOR:

"This action is brought by the plaintiff to recover dower in certain lands in the possession of the defendant.

"The plaintiff bases her claim for dower upon the allegation that she is the widow of one Lewis Williams, Sr., deceased.

"The only question which is seriously litigated is, whether the plaintiff is the widow of said deceased. The evidence shows that the plaintiff was married by a formal marriage ceremony to said Lewis Williams, Sr., on the 9th day of May, 1870, and tends to show that she lived with him as his wife from that time to the time of his death, August 20, 1873.

"The appellant claims that at the time plaintiff married the deceased, she was the lawful wife of one William Jones, who was then living and not divorced from the plaintiff. The plaintiff does not deny that she had been married to said Jones and had lived with him as his wife, but she alleges and shows that she was duly and lawfully divorced from him by the judgment of the circuit court of Kenosha county in this state, in the month of November, 1870.

"It appears from the stipulation of the parties, that such

divorce suit was instituted by the plaintiff in this action by the name of Jane Jones, and that she alleged in her complaint therein, that she and the said William Jones were duly and lawfully married in Wales, in the year 1863. Such action was commenced in October, 1870; the complaint was sworn to by the plaintiff; the summons was personally served on the defendant William Jones; and, as a ground for the divorce, the complaint charged the said William Jones with willful desertion for more than one year before the commencement of such action. The judgment in that action was entered in November, 1870, and decreed and adjudged that the marriage theretofore existing between the said Jane Jones and the said William Jones be and the same was thereby dissolved, and each of the parties freed from the obligations thereof.

"The plaintiff further gave evidence tending to prove that at the time of her marriage to William Jones, he (Jones) had another wife living, from whom he had not been divorced, and who was still living.

"The plaintiff recovered in the action in the court below, and the defendant appealed to this court."

*John T. Fish*, for appellant:

1. The instructions given by the court upon the subject, and its refusal of those asked by defendant, gave the jury to understand that proof of marriage by cohabitation as husband and wife, acts and declarations of the husband recognizing her as his wife, and conduct of the parties, was sufficient, *although they should find* that no legal marriage was ever solemnized or contracted between them. In other words, the court *substituted evidence of marriage for marriage itself*. The charge leaves out all question as to the reputation of the parties. To establish marriage by circumstantial evidence, proof that the plaintiff, during the cohabitation, was of good repute in the community, was indispensable, as appears by all the authorities cited on the other side. Mere proof that the parties resided together as husband and wife, and that the reputed

Williams vs. Williams.

husband, by acts and declarations, recognized the other party as his wife, is not conclusive of a marriage in fact; though, where the rights of third parties are concerned, as where one, on the faith of the conduct of the alleged husband, has furnished the alleged wife with necessaries, such conduct may create an estoppel. The instruction also ignores the question whether the parties were reputed to be husband and wife in the community where they resided; though that is an essential element in the proof, as appears from all the cases cited for the respondent. And the law is, that the inference of marriage arising from cohabitation and repute *is rebutted by showing that the cohabitation was illegal at its commencement. Williams v. The State*, 44 Ala., 24; *Physick's Estate*, 2 Brewster (Pa.), 179; *Bicking's Appeal*, id., 202; *Hunt's Appeal*, 10 Ch. L. N., 384; *The Accounting in Christie's Estate*, 1 Tucker (N. Y. Surr.), 81; *In the matter of Angevine's Estate*, id., 178.   2. A decree of divorce by a competent court, having jurisdiction of the parties, is conclusive as to the status of those parties *at the time of the rendition of such decree*.   2 Bish. on M. and D., 4th ed., §§ 264, 362, 754–5, 765; Freeman on Judgments, § 313; Bigelow on Estopp., 144; Story's Conflict of Laws, §§ 200–230, 597; 1 Greenl. on Ev., § 554; 2 id., § 461; *Hood v. Hood*, 110 Mass., 463; *Burlen v. Shannon*, 3 Gray, 387; *Smith v. Smith*, 13 id., 209; *Dorsey v. Dorsey*, 7 Watts, 350; *Jackson v. Astor*, 1 Pinney, 157, 158; *Vilas v. Reynolds*, 6 Wis., 214, 228; *Amory v. Amory*, 26 id., 152.

*J. V. Quarles*, for respondent:

1. There was no error in refusing defendant's instructions as to proof of marriage.   (1) The first of these would have restricted the inquiry to a marriage "solemnized," i. e., performed with solemn or ritual ceremonies.   The second is faulty because it refers only to a marriage solemnized or contracted "after November, 1870," and not *after the divorce* spoken of.   1 Bishop on M. & D., § 508.   Besides, the word

"actual" might well have misled the jury to believe that what is called a marriage in fact, or ceremonial marriage, was intended. The word is so often used by legal writers in this sense, that it is a question whether it has not acquired this technical meaning. The third instruction was merely equivalent to saying that if the jury found that the evidence did not prove a marriage, then the evidence was insufficient to substantiate it. This was a mere truism, the refusal to give which could be no error *(Burns v. Elba*, 32 Wis., 605); yet it might have served as a trap for the jury. (2) It is not disputed that, by the common law and by the law of this state, a marriage *per verba de præsenti* is valid. Proof of any facts or circumstances from which marriage may be inferred, is admissible. Such facts and circumstances were in evidence, and their proper weight was attributed to them in the instruction given; and there is no ground for saying that the court mistook evidence of marriage for marriage itself. But it is a fact that the best authorities fail to distinguish between these circumstances used as evidentiary facts, and as constituting marriage itself. 1 Bishop on M. & D., § 508. And it is difficult to see why continued acts and declarations should not be considered, not only as implying consent, but as consent itself. (3) It is claimed that the inference of marriage arising from cohabitation or repute is rebutted by showing that the cohabitation was illegal in its commencement. But this must depend upon the circumstances of the case. Here the plaintiff and Lewis Williams, Sr., cohabited together as husband and wife down to the time of his death; during all this time, by his acts and declarations, he held her out as his wife; they visited his acquaintances and relatives as married people, and were everywhere received as such; they joined in a conveyance of land; they evinced fully their intention and desire to live together in actual lawful marriage; and they had come together in the first instance, not as deliberately choosing concubinage, but under a marriage properly solem-

nized. If persons under a disability come together intending and choosing illicit commerce, it may be that no presumption that they have changed their minds arises from a continuance of the relation after the impediment is removed; though there are authorities against this position. But it would be contrary alike to reason and authority, to hold that a similar rule would obtain where the intention and choice of the parties were manifestly innocent. The better authority is, that, under the circumstances present in this case, a marriage may be inferred after the removal of the disability, even though the facts indicate that no formal consent was ever afterwards interchanged. 1 Phillipps on Ev. (C. H. & E.'s notes), 631; 1 Bishop on M. & D., §§ 506, 508, and cases there cited; *Jackson v. Claw*, 18 Johns., 347, 350; *Fenton v. Reed*, 4 id., 52, 54; *Rose v. Clark*, 8 Paige, 574, 580 et seq.; *In re Taylor*, 9 id., 611, 614 et seq.; *Physick's Estate*, 4 Am. Law Reg., N. S., 418, 430; *McReynolds v. State*, 7 id., 736, 740; *Holabird v. Ins. Co.*, 12 Am. Law Reg., N. S., 566, 568; *Wilkinson v. Payne*, 4 Durnf. & E., 468; *Lyle v. Ellwood*, 11 Moak's Eng. R., 702, 710–12, and note; *De Thoren v. Att'y Gen.*, 17 id., 72, 75, 77, 80. 2. The judgment divorcing plaintiff from Jones is not conclusive as to the validity of her marriage to Jones. Plaintiff is not bound by that judgment as against defendant, unless defendant and all the world are also estopped by it; for estoppels must be mutual, and one party cannot take advantage of any judgment unless he also is bound thereby. Co. Litt., 251a; *Lansing v. Montgomery*, 2 Johns., 382; Bouv. Law Dic., "ESTOPPEL." Unless, therefore, the decree of divorce conclusively established the validity of the marriage to Jones as against the whole world, it is not conclusive as against plaintiff in this action. Some citations are made from text writers which seem to sustain the position that the decree is conclusive upon that point (2 Bishop on M. & D., §§ 264, 362, 754, 755, 765; Bigelow on Estoppel, 144); but it is believed that no adjudication here or abroad can be

found to sustain it, and that either the somewhat ambiguous language of those writers has been misapprehended by counsel on the other side, or that the statements of those writers are founded on misapprehension of the decisions. The judgment in the divorce action was simply that the said marriage theretofore existing, etc., be and the same was thereby dissolved. There was a finding, indeed, that each and every allegation of the complaint was true; but the finding cannot enlarge the effect of the judgment. A judgment of divorce cannot in terms affirm the marriage, or be a direct adjudication on its validity; for its sole function is to dissolve it. True, the marriage must have been proved and found before a judgment of divorce could properly be rendered; but a judgment "does not conclude any third person in reference to the facts which it necessarily affirms or denies." "The sentence, to have this effect, must of course be a direct adjudication upon the specific fact of the marriage, or its dissolution; and a finding which might be inferred argumentatively would be attended with no such results." 2 Bishop on M. & D., § 745. If, for example, adultery were the only cause for which divorce could be granted, then the judgment of divorce would affirm the adultery as necessarily as it would the marriage; yet no one would claim that it was conclusive of the party's guilt in another action. The true rule seems to be, that the judgment of divorce is conclusive only as to the *status conferred thereby;* i. e., that after divorce all persons are estopped from denying the freedom of the parties from matrimonial obligation to each other. 1 Greenl. on Ev., § 525; *Burlen v. Shannon*, 3 Gray, 387, 389. The rule and its reasons are stated in 2 Phillips on Ev. (C., H. & E.'s notes), *74: "The state or legal character conferred on a person by the ecclesiastical courts shall give him certain rights and subject him to certain liabilities." We find accordingly that it is the sentence alone which can have this effect. The examples given illustrate the extent of the rule. "Letters of administration are conclusive that the per-

son therein appointed administrator is such." Again: "Where the object of the suit has been directly to deprive a person of the legal character of husband or wife . . . the sentences of nullity of marriage, or of divorce, appear to have the effect of establishing conclusively the state and legal character of parties, for and against all persons." That is, the act of the court is conclusive, and that which it has done — not that which it has recognized — cannot be disputed. Letters of administration, here placed in the same category, are conclusive only to this extent, and are not even evidence of the death of the intestate. 2 Phillipps on Ev. (C., H. & E.'s notes), *91–*93; 1 Greenl. Ev., § 550; 1 Starkie on Ev., 10th Am. ed., *339; *Newman v. Jenkins,* 10 Pick., 515. The cases cited by the appellant, where they touch the subject at all, simply hold that a marriage dissolved by decree is dissolved as to all the world. To hold that the decree would be conclusive as to the facts upon which it rested, would be inequitable and extremely inconvenient, subversive of public policy, good morals and vested rights. *Argumentum ab inconvenienti plurimum valet in lege.* Broom's Leg. Max., 184; Vaughan, 37, 38; Co. Litt., 66 a. Under that doctrine, an executed contract, which Williams had a right to make, made with one capable of contracting, is annulled by the act of a court where he cannot appear to defend. Under that doctrine, any marriage may be annulled by some strange woman obtaining a divorce, by publication and default, from a man to whom she never was married; and his wife must lose her portion at his death, and his children their inheritance. Under that doctrine, any man, by obtaining a divorce from a woman to whom he never was married, may divorce himself from his own wife, and may bastardize his own children even after the death of their mother. Other instances of the iniquitous workings of such a rule might be suggested. If further argument were necessary, the line of thought suggested in *Barber v. Root,* 10 Mass., 265, might be pursued. There it is held that regulations on the

subject of marriage and divorce are rather parts of the criminal than of the civil code, and that divorce is a species of punishment. Hence, a sentence of divorce can have no more effect, as to the facts on which it is based, than a criminal sentence, which is not conclusive even as to guilt, where guilt or innocence is the issue. *Maybee v. Avery*, 18 Johns., 354; Buller's N. P., 245.

TAYLOR, J. The learned counsel for the plaintiff and respondent insists that she was entitled to recover upon either of two theories: *First*, that if she was the lawful wife of William Jones at the time she married Lewis Williams, Sr., she was afterwards lawfully divorced from said Jones about two years and nine months before the death of Lewis Williams, Sr., and, as during all that time she and the said Williams lived and cohabited together as husband and wife, and she was all that time spoken of by the said Williams as his wife and treated by him as such, and during all that time she spoke of said Williams as her husband and treated him as such, from the evidence in the case upon that point, if necessary to sustain the plaintiff's claim that she was the widow of said Williams, the jury would be justified in finding a marriage in fact between the said Lewis Williams, Sr., and the plaintiff, after her divorce from the said Jones. *Second*, that there was sufficient evidence in the case to justify the jury in finding that she never was the lawful wife of William Jones, for the reason that he had a wife living at the time she was married to him, and that such wife is still living and not divorced, and that consequently her formal marriage with the deceased, Lewis Williams, Sr., on the 9th of May, 1870, was in every respect a lawful marriage.

The learned counsel for the appellant insists: *First*, that the judgment record in the divorce suit between Jones and Jones, given in evidence, and entered sometime in November, 1870, is conclusive evidence against the plaintiff that at the

time of the entry of such judgment, and from the date of her alleged marriage with the said Williams in 1870, to the time of the entry of such judgment, she was the lawful wife of said William Jones; and that, as a consequence, her marriage with said Lewis Williams, Sr., on the 9th of May, 1870, was absolutely void. *Second*, that there was not sufficient evidence of an actual marriage between the plaintiff and the said Lewis Williams, Sr., deceased, subsequent to the date of the judgment in said divorce suit, and consequently she had failed to prove that she was the widow of the said deceased. *Third*, that the court erred in refusing to give to the jury the following instructions asked by the defendant:

"Testimony has been admitted of acts and conversations of Lewis Williams, Sr., by which he recognized the plaintiff as his wife. This testimony was admitted as being competent, and as tending to show that the parties were married. If you find that such acts of *Jane Williams* and Lewis Williams, Sr., which have been given in evidence, *arose from and were the result of a marriage ceremony which took place between the plaintiff and Lewis Williams, Sr., in May*, 1870, and that *Jane Williams* was then the wife of William Jones, and that no marriage was ever solemnized between the plaintiff and Lewis Williams, Sr., after the divorce was granted to the plaintiff in November, 1870, from said William Jones, then your verdict must be for the defendant.

" If you find that Lewis Williams, Sr., spoke of the plaintiff and introduced her as his wife because of some pretended marriage between the plaintiff and himself at a time when the plaintiff was the wife of William Jones, *and not because of any actual marriage solemnized or contracted after November, 1870*, then your verdict must be for the defendant.

" If you find that no legal marriage was ever solemnized or contracted between *Jane Williams*, the plaintiff, and Lewis Williams, Sr., then all evidence of acts and declarations on the

part of Lewis Williams, Sr., are unavailing, and the defendant is entitled to your verdict."

The fact that the first point made by the learned counsel for the appellant is one of such grave importance to the public, and so far-reaching in its effects upon the rights of persons not parties to the action for divorce, if sustained to the extent claimed by the learned counsel, and the want of time necessary to enable each member of the court to make a thorough examination of the subject for himself, and the further reason that we are all agreed that the judgment must be reversed for the refusal of the court to instruct the jury as requested by the counsel for the defendant, has induced us to leave that question undecided.

That the instructions which are above set forth, and which were requested by the defendant's counsel, or some instructions equivalent thereto, should have been given to the jury, is apparent upon the evidence in the case. The plaintiff had proved a marriage solemnized between herself and the deceased at a time when the jury, from the evidence given on the trial, might have found that she was the wife of said William Jones. It is admitted by the learned counsel for the plaintiff, that it was necessary for her to show, by sufficient affirmative proof, that a lawful marriage in fact existed between her and the deceased at the time of his death. There was no pretense that there was any direct proof of any such lawful marriage, unless the marriage on the 9th of May was a lawful marriage; and it is admitted by both parties that such marriage was void, if at that time the plaintiff had another husband living. The evidence also showed that the cohabitation, acts and declarations of the parties as to their being married and their living together as husband and wife, commenced at the date of such marriage in May, 1870.

The authorities hold, and this court is not inclined to hold otherwise, that in an action for dower the plaintiff is not

required to make proof of the actual solemnization of a marriage between the plaintiff and the deceased, in whose estate she claims dower; but they also hold that the evidence must be sufficient to establish the fact of a lawful marriage between them. None of the cases hold that living and cohabiting together as husband and wife, or even the declarations of the parties that they are husband and wife, constitute a marriage in fact; or that such acts and declarations are a substitute for the marriage contract; the extent to which the authorities go is, that such evidence may be sufficient to prove a lawful marriage in fact.

The law of this state declares that marriage is a civil contract (see sec. 2328, R. S. 1878); and there is no statute law which points out in what manner the contract must be entered into to render it valid. It need not be in writing or in the presence of witnesses, but there must be an agreement between the parties that they will hold toward each other the relation of husband and wife, with all the responsibilities and duties which the law attaches to such relation, otherwise there can be no lawful marriage.

It would seem to follow, therefore, that every lawful marriage must have been entered into by the parties at some particular date or time, and that it cannot in any case be the simple result of cohabitation or the continued conduct of the parties, which ordinarily accompany the married state. As a general rule, when a marriage is sought to be proved by conduct, cohabitation and repute, the date of the marriage in fact, which such conduct and repute tends to establish, is the date of the commencement of such conduct and repute, and not afterwards.

It follows, therefore, that when the evidence shows that at the time of the commencement of the cohabitation and conduct from which it is sought to prove a marriage in fact, there was in fact no such marriage, the mere continuance of such cohabitation and conduct, without something more to indicate

that there had been a change in the relations of the parties to each other, would not be sufficient to show a marriage in fact subsequent to the commencement of such cohabitation and conduct.

In the case at bar, if the jury had found that the marriage of the parties on May 9, 1870, was void because of the fact that the plaintiff had another husband then living, and if they had also found that all the acts, conduct and declarations of the parties after the date of the divorce of the plaintiff from such former husband, " arose from and was the result of such void ceremony," such finding, we think, would have negatived the inference of any marriage in fact between the parties subsequent to such divorce, and, as a consequence, have defeated the plaintiff's recovery.

The same consequences would have resulted from a finding that all the acts, conduct and declarations of Lewis Williams, Sr., were in consequence of a marriage with the plaintiff when she was the wife of another, and not in consequence of any marriage with her after her divorce from such husband; because such finding would necessarily have negatived any inference that he had contracted any marriage in fact with the plaintiff after such divorce. However ignorant Lewis Williams, Sr., may have been of the fact that the plaintiff had another husband living at the time he married her, such marriage was absolutely void as to him, notwithstanding his ignorance and good faith; and he could only make her his lawful wife by some marriage in fact, after the divorce of her former husband.

We are of the opinion, also, that the third instruction requested should have been given, and that the general charge did not cure the error of the refusal.    It would seem from the very nature of the matter in issue, that if the jury found that no marriage was in fact ever solemnized or contracted between the plaintiff and the deceased, all the acts and declarations of the parties were of no avail.    The only object in

proving the acts and delarations of the parties was to establish the fact that a marriage was contracted between them; and if the jury found, as a matter of fact, that no marriage was in fact contracted, then all the other matters introduced into the case were of no consequence.

The only instructions given to the jury on the subject of what evidence was necessary to establish a marriage between the parties, were the following. At the request of the plaintiff the court gave this instruction: " In an action by a widow to recover dower in the lands of her deceased husband, it is not necessary for her to make strict proof of marriage; but proof by cohabitation as husband and wife, acts and declarations of the husband recognizing her as his wife, and conduct of the parties, may be sufficient." In the general charge, the court upon this subject said: " And you will determine from a preponderance of the testimony, whether the plaintiff was the lawful wife of Lewis Williams, Sr., and is his widow." The court also charged the jury that, if they found that the plaintiff had another husband living at the time of her marriage to Williams, on the 9th of May, 1870, then such marriage was void, and she did not thereby become the wife of said Williams; but he did not instruct the jury that if such marriage of the 9th of May, 1870, was void, she could not recover in the action.

The case was submitted to the jury upon the issue as to whether there had been a marriage in fact between the plaintiff and the deceased, after the plaintiff had obtained a divorce from William Jones, upon the theory that it was entirely immaterial to the determination of that issue, that the cohabitation and living together as husband and wife upon which the plaintiff relied to establish such marriage, commenced at a time when it was impossible for them to contract a lawful marriage. This was undoubtedly an erroneous view of the case.

Courts cannot but look with suspicion upon a claim of mar-

riage founded upon evidence of cohabitation and conduct which is consistent with the fact of actual marriage, where the evidence affirmatively shows that at the time such cohabitation and conduct commenced, there was in fact no marriage, and that such cohabitation and conduct was meretricious and in violation of law. When such fact is shown, the effect of the evidence upon the question of a marriage in fact at the date of the commencement of such unlawful cohabitation and conduct, is entirely destroyed; and in order to establish a marriage subsequent to the commencement of such unlawful and meretricious conduct, by continued cohabitation, conduct and declarations of the parties, or by reputation, there should be some affirmative evidence showing that the subsequent relations of the parties were changed, and that that which was meretricious and unlawful in its commencement had been rendered lawful.

It would require much less proof to satisfy either a court or jury that there was a marriage in fact between persons in good repute, and as to whom there was no obstacle to marriage, when the proof of marriage depended upon the fact of cohabitation as husband and wife, and the recognition of each other as such, than when it appeared affirmatively that one or both of the parties claiming a marriage, upon like proofs, were at the time of the commencement of the cohabitation incompetent to contract marriage. And this would be especially so, if it were shown that the party claiming such marriage had full knowledge, at the time of the commencement of such cohabitation, that he or she was incompetent to contract a lawful marriage with the other party. The fact appearing that such party unlawfully commenced the cohabitation, would be strong evidence that he or she would not hesitate to continue such unlawful conduct after the disability had been removed. We think the judge of the circuit court ought to have called the attention of the jury to this view of the case, and to have at least instructed them, as requested by

the counsel for the defendant, that if they found that the plaintiff had another husband living at the time she married the deceased, in May, 1870, they must then inquire whether there was any sufficient evidence in the case, from which they could find a marriage in fact between the parties subsequent to the time of her divorce from such former husband; and that he should also have instructed them that, if the continued cohabitation and conduct of the parties, and their declarations as to their being married and being husband and wife, referred to the marriage made in May, 1870, and at a time when they could not lawfully marry, and not to any marriage in fact contracted after the plaintiff's divorce, then they must find that no marriage in fact was proven.

The general rule upon the question of proof of marriage by proof of cohabitation, conduct and declaration of the parties, is stated by a learned judge as follows: "The general and ordinary presumption of the law is in favor of innocence, in questions of marriage, and of legitimacy where children are concerned. Cohabitation is presumed to be lawful till the contrary appears. Where, however, the connection between the parties is shown to have had an illicit origin, and to be criminal in its nature, the law raises no presumption of marriage." 2 Kent, 87; *Jackson v. Claw*, 18 Johns., 346; 2 Greenl. Ev., § 464; *Physick's Estate*, 4 Am. L. Reg. (N. S.), 418. The presumption against marriage, where the connection between the parties is shown to have been illicit in origin, may, however, be overcome by proofs showing that the original connection has changed in its character, and a subsequent marriage may be established by circumstances, without actual proof of a marriage in fact. The cases cited by the learned counsel for the respondent in their brief in this case, fully establish this point. The following cases also illustrate the same subject: *Starr et al. v. Peck*, 1 Hill, 270; *Clayton v. Wardell*, 4 N. Y., 230; *Caujolle v. Ferrie*, 23 N. Y., 90; *O'Gara v. Eisenlohr*, 38 N. Y., 296; *Foster v. Hawley*, 8 Hun,

68. The rule laid down in the last case cited is stated as follows: " A cohabitation illicit in its origin is presumed to be of that character, unless the contrary be proved, and cannot be transformed into matrimony by evidence which falls short of establishing the fact of an actual contract of marriage. Such contract may be proved by circumstances, but they must be such as to exclude the inference or presumption that the former relation continued, and satisfactorily prove that it had been changed into that of actual matrimony by mutual consent."

We are inclined to hold the rule as above stated to be the proper rule, when applied to a case like the one at bar. Where the party claiming a marriage (on the theory that she was lawfully married to William Jones) deliberately entered into a bigamous marriage contract with the deceased, and commenced cohabitation under such contract, if, notwithstanding the fact that she knowingly commenced cohabiting with the deceased when she was the lawful wife of another, she claims a lawful marriage with such deceased after her divorce, and after she had thereby acquired the right to become his wife, she ought to be required to establish the fact of such subsequent marriage, either by express proof of the contract of marriage, or by circumstances which would clearly exclude the presumption that she continued to live with him under such illegal contract of marriage.

*By the Court.* — The judgment of the circuit court is reversed, and the cause remanded for a new trial.

RYAN, C. J., took no part.