## MARIA NORCROSS *vs.* ALVIN C. NORCROSS.

Suffolk.    November 10, 1891. — January 9, 1892.

Present: ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Marriage.*

On the issue of an alleged marriage either in New Hampshire, New York, or in this Commonwealth, between the parties to a libel for a divorce, the testimony of the libellant and libellee showed that the parties entered into a contract of marriage between themselves in New Hampshire, and lived together in accordance therewith in that State and in this Commonwealth. There was conflicting evidence as to whether there was any ceremony of marriage in New Hampshire in the presence of the libellant's father, who was a justice of the peace; but it was found as a fact that there was no such ceremony anywhere in the presence of any person authorized or supposed to be authorized to solemnize a marriage.

While the parties were living together as husband and wife in this Common-
wealth they twice went to New York together, and continued in the same ap-
parent relation, at one time for three days, and at another for one week; but
there was no evidence that while there they entered into any contract of mar-
riage between themselves. *Held*, that a finding was warranted that there had
been no marriage between the parties.

LIBEL for a divorce, filed in this court on February 23, 1886.
Answer, a denial of the marriage. Hearing before *Devens*, J.,
who reported the case for the consideration of the full court, in
substance as follows.

On the issue of a marriage between the parties either in New
Hampshire, New York, or in this Commonwealth, it appeared
from the testimony of the libellant and libellee, that in 1863–64
the parties, being engaged to be married, while alone in the
house of the libellant's father, whose name was Taylor, at Little-
ton, New Hampshire, entered into a mutual agreement of marriage,
of which occurrence the libellee made the following record in his
diary : " Hand in hand through life we go and share each other's
joy and woe," signing it " Alvin." Thereupon the libellee came
to Boston for employment. In 1865 he returned to Littleton to
spend Christmas with the libellant at her father's house, and
told the family that he wished to take " the libellant, his wife,
with him to Boston," and the father stated that he had no objec-
tion to the libellee marrying his daughter. There was conflict-
ing evidence as to whether there was any ceremony of marriage
at the house in presence of the father, but the judge found as a
fact that there was not. The parties left the father's house
with the consent of all, upon the understanding and agreement
that they were to go before a clergyman at Concord, New Hamp-
shire, on their way to Boston, and have a marriage ceremony
performed by him. They omitted, however, to do so, and upon
their arrival in Boston proceeded to live and cohabit together as
husband and wife until 1882, and held themselves out as such
and were so treated and received by their friends and relatives.
Notice was sent to the libellant's father, with the parties' con-
sent, that a marriage was solemnized at Concord as proposed,
and the father thereafter entered in the family Bible, " Maria
Taylor was married to A. C. Norcross, Dec. 26th, 1865." Dur-
ing the time the parties lived together as husband and wife the
libellee took the libellant to New York with him for three days,

and they were registered at the hotel at which they stopped as man and wife, and occupied the same room as such, and the libellee introduced her as his wife, and treated her as such, and she was so received by his friends. On another occasion they went to New York upon a visit, and there lived together in a boarding-house for a week, and held themselves out as husband and wife.

The judge found and ruled that, upon the evidence, there was no marriage under the laws of either New Hampshire, New York, or of this Commonwealth, and dismissed the libel, and reported the case for the consideration of the full court, upon the question whether he was authorized upon the evidence to find that there had been no marriage between the parties.

*B. F. Butler & N. L. Graffam*, for the libellant.

*N. Morse*, for the libellee.

ALLEN, J. In this case, the libellant and the libellee both testified, so that the court was not left to draw inferences merely from circumstances. It was found as a fact that there was no ceremony of marriage in the presence of the libellant's father in New Hampshire, and there was no evidence of any such ceremony elsewhere in the presence of any person authorized or supposed to be authorized to solemnize a marriage. According to the law of New Hampshire, as declared in *Dunbarton* v. *Franklin*, 19 N. H. 257, if parties enter into a contract of marriage between themselves, and live together in accordance with it, such facts do not constitute a marriage. We are referred to no statute or decision which shows that the law of that State has since been changed. The finding that there was no marriage under the law of New Hampshire was, therefore, well warranted. The law of Massachusetts is similar, and there was nothing to show any formal ceremony of marriage here. *Commonwealth* v. *Munson*, 127 Mass. 459.

If the acts which took place in New Hampshire had taken place in New York, they probably would have been held to constitute a marriage there. *Brinkley* v. *Brinkley*, 50 N. Y. 184, 197, 198. *Hynes* v. *McDermott*, 82 N. Y. 41, 46. But there was no evidence that the parties while in New York entered into any contract of marriage between themselves. The substance of what was proved is, that the parties, without being married, were

living together as husband and wife in Massachusetts, and while doing so they twice went to New York together and continued in the same apparent relation, at one time for three days, and at another for one week. We have not been referred to any decision in New York which holds that these facts would either constitute marriage there, or afford a conclusive presumption of it ; and we are slow to believe that acts which in Massachusetts were illicit will be deemed matrimonial merely by being continued without any new sanction by residents of Massachusetts while transiently across the State line. *Randlett* v. *Rice*, 141 Mass. 385, 394.                                    *Decree affirmed.*