## COMPTON ET AL. *v.* BENHAM ET AL.

[No. 6,198.   Filed July 1, 1908.   Rehearing denied June 3, 1909.]

1. APPEAL.— *Evidence.— Agreed Statements.— Introduction.— How Shown in Bills of Exceptions.*—An agreed statement as to the testimony of an absent witness, which is embodied in a bill of exceptions purporting to contain all of the evidence given in the case, is sufficiently shown to have been introduced in evidence. p. 56.

2. TRIAL.— *Burden of Proof.— Marriage.— Claiming Property Through.*—In a suit by the wife's legal heirs against her husband, or his legal heirs, to recover her property, the burden is upon the plaintiffs to prove that at the time of their marriage the husband was not divorced from his former wife.   p. 56.

3. EVIDENCE.—*Negativing Divorce.—Requisites.*—Where the burden is upon the plaintiffs to prove that the ancestral husband was not divorced from his first wife at the time of his marriage with his third wife, only such evidence is requisite as, in the absence of counter testimony, would afford ground for presuming that the allegation is true.   p. 56.

4. MARRIAGE AND DIVORCE.— *Evidence.— Inferences.*— Evidence showing that a husband lived with his first wife in a county in Michigan in 1875, that he separated from her in that year and thereafter lived in two Indiana counties, that the wife subsequently lived in another Indiana county, that no divorce was granted to him in any of such counties, and that a divorce was granted to her in Michigan in 1883, furnishes a basis for an inference that the husband was not divorced at the time of his third marriage in 1882.   p. 57.

5. MARRIAGE.—*Contracts.—Cohabitation.*—Marriage is a status resulting from a contract made by competent parties, and cohabitation, conduct, reputation and actions furnish only presumptive evidence of the execution of such a contract.   p. 58.

6. MARRIAGE.— *Illegal.— Cohabitation.*— Evidence that an undivorced man married a woman ignorant of his incapacity, that his former wife subsequently obtained a divorce, and that the last wife continued to live with him wholly ignorant of such former marriage or of such divorce, supports an inference that no common-law marriage contract was entered into.   pp. 58, 60.

7. MARRIAGE.—*Contracts.—Void.*—A marriage entered into by an undivorced man is void.   p. 60.

8. NEW TRIAL.—*Granting of.—Effect.*—The granting of a new trial in a cause has the effect of placing the case in a position as

though there had been no trial of the case, and it is the duty of the court to proceed as in the first instance. p. 61.

9. TRIAL.—*New Trial.—Change of Venue.—Rules of Court.*—After a new trial has been granted, a motion for a change of venue, or change of judge, made within a proper time, should be granted, the rules of the trial court providing that where such applications are not made until after the trial is set they shall be granted only in the discretion of the court not applying in such situation. p. 61.

From Elkhart Circuit Court; *James S. Dodge,* Judge.

Suit by George E. Compton and others against Francis A. Benham and others. From a decree for defendants, plaintiffs appeal. *Reversed.*

*L. D. Hall, Van Fleet & Van Fleet* and *W. A. Ketcham,* for appellants,

*Miller, Drake & Hubbell, Elias D. Salsbury* and *Perry L. Turner,* for appellees.

WATSON, J.—This was a suit by appellants, the brothers and sisters, and the children of deceased brothers and sisters, of Eliza A. Yeoman, to quiet title to eighty acres of land in Elkhart county, Indiana. Francis A. Benham, defendant in the original suit, filed an answer and a cross-complaint, praying that his title to the land in question be quieted. Appellees were substituted as the sole heirs of said Francis A. Benham.

Judgment was rendered against appellants in the original suit, and they filed a motion for a new trial as of right. After the granting of such new trial, but before a time therefor was set, appellants filed an affidavit for a change of venue from the county and from the judge, but their motion was denied, an exception being duly reserved.

At the close of appellants' evidence, upon motion by appellees, the court directed the jury to return a verdict for appellees. Such verdict was returned, and it was decreed thereupon that appellants take nothing, and that appellees' title to said land be quieted.

The errors assigned are: (1) Sustaining appellees' mo-

tion to direct a verdict in their favor; (2) directing a verdict for appellees; (3) overruling appellants' motion for a new trial.

By a written stipulation the parties admitted, for the purpose of trial: "That Sarah Morse of Angola, Indiana, if present in court at such trial, would testify in said cause under oath, and say that she knew said decedent, Francis A. Benham, and knew where he resided from and after May 20, 1875, until he began to reside in Elkhart, Indiana, about twenty-five years ago, where he resided until his death, and that he resided in Angola, in Steuben county, Indiana, from May 20, 1875, up to the time he began to reside in Elkhart, Indiana, all of which shall be admitted and read in evidence on the trial of the above entitled cause.

"Dated January 8, 1906."

The following oral statement as evidence was also made before the court and jury: "That the land described in the complaint was owned, in fee simple, by Eliza Benham on the date of her death, April 20, 1904, and that she had owned the tract of land since the year 1880; that at the time of her death she left no father, no mother, no child, and no descendant of any child surviving her; that the plaintiffs comprise all of her brothers and sisters and the children of the deceased brothers and sisters of Eliza A. Benham; that the defendants are the only children and heirs-at-law of Francis A. Benham, deceased; that Francis A. Benham died on November 19, 1905; that he was married to Hannah Benham in 1848, in New York; that in 1865 they moved to Bronson, Branch county, Michigan, where they lived together as husband and wife until 1875; that they separated some time in 1875, and never lived together after that as husband and wife; that Francis A. Benham went from Bronson to Angola, Indiana, in the year 1875, and was married to Eugenie L. Morse on May 25, 1875, and that they lived together as husband and wife in Angola and Elkhart, Indiana, until

1879, when she died; that on November 15, 1882, Francis
A. Benham was married to Eliza A. Yeoman, at White
Pigeon, Michigan; that he lived with her in the city of Elk-
hart, Elkhart county, Indiana, from the time of said mar-
riage until the time of her death on April 20, 1904; that
Hannah Benham, the mother of the defendants and the first
wife of Francis A. Benham, procured a divorce from him on
June 18, 1883, in the Branch Circuit Court, of Branch
county, Michigan, after a personal service of summons on
him, which divorce was a valid and legal divorce; that at
the time of this divorce, Francis A. Benham was living with
Eliza A. Yeoman as his third wife, in the city of Elkhart,
keeping house in a thickly populated neighborhood, and they
were holding themselves out as husband and wife; that from
the time the divorce was granted to his first wife, as herein-
before stipulated, Francis A. Benham and said Eliza A. Yeo-
man, as his third wife, lived together in said house, situated
on the land in dispute, as husband and wife, and continued
so to do until her death in 1904; that during all this time
they were highly respected in the community, and were re-
garded by all their neighbors and friends as husband and
wife; that they held themselves out to the community in
general as husband and wife, and, as husband and wife, at
various times executed deeds for the conveyance of real
estate, and executed mortgages, and during all of said time
he, openly and publicly, treated her as his wife, and she
treated him as her husband; that during part of this period
they resided in part of the house owned by George Compton,
one of the plaintiffs herein, and lived there for some time as
husband and wife, and were so treated by him as husband
and wife; that said Hannah, the first wife of Francis A.
Benham, died in 1889; that so far as Eliza A. Yeoman, or
any of these plaintiffs, knew, up to the time of her death,
said Eliza A. Yeoman was the lawful wife of Francis A.
Benham, and believed that she was, and knew nothing of the
divorce proceedings in 1883, at Coldwater, Michigan; that

said Francis A. Benham and Eliza A. Yeoman, from the time of their marriage on November 15, 1882, lived and cohabited together as husband and wife, and acted and conducted themselves as the same from that time until the time of her death, without regard to the divorce, she knowing nothing about the divorce; that from the time of the marriage of Francis A. Benham to said Eliza A. Yeoman in 1882, until her death in 1904, she went by the name of Eliza A. Benham, and was called exclusively Benham, and was not called or known as Yeoman during any of said period; that said Francis A. Benham, during all of said period and before, was a physician in general practice, and during all of said period he practiced among the best families in the city of Elkhart; that from Bronson, Michigan, to Angola, Indiana, is a distance of eighteen miles, and from Elkhart, Indiana, to Bronson, Michigan, is a distance of fifty-five miles; that Hannah Benham, the first wife of Francis A. Benham, resided in Bronson, Michigan, and in LaGrange, Indiana, from 1875 until she died; that Francis A. Benham, original defendant in this case, died on November 19, 1905, in the city of Elkhart, Indiana, and left surviving him his three children and only heirs, Francis A. Benham, Emma Benham and Fred A. Benham, who were children by the decedent and his first wife, Hannah Benham; that there is no record of any divorce proceedings or divorce granted between said decedent, Francis A. Benham, and his first wife, Hannah Benham, in any of the following counties to wit, Steuben county, Indiana, LaGrange county, Indiana, and Elkhart county, Indiana; that the records of the circuit court of Branch county, Michigan, disclose that Hannah A. Benham brought suit in the circuit court of Branch county, Michigan, in 1875, against Francis A. Benham for a divorce, but the records do not disclose any decree upon said proceedings, and no decree of divorce in Branch County, Michigan, is disclosed by the records, other than the divorce granted on June 18, 1883."

It is objected that the written stipulation pertaining to the testimony by Sarah Morse was not before the court and jury, because it was not read to the jury. The stipulation provided that it should be admitted and read in evidence on the trial. It was duly filed, and was incorporated in the bill of exceptions, which also contained the oral statement of facts made to the court and jury. It does not affirmatively appear from the record that the stipulation was not read to the jury. Moreover the bill of exceptions affirms that it contains all the evidence given in the cause. It seems an unavoidable conclusion that the testimony agreed upon was present in the mind of the judge, and must have been duly considered in directing the jury to return a verdict for appellees.

Appellants admit that the burden is upon them to prove that at the time Francis A. Benham went through the form of a marriage ceremony with Eliza A. Yeoman he was not divorced from his first wife. It is thus incumbent upon them to prove a negative. *O'Kane* v. *Miller* (1891), 3 Ind. App. 136; *Mississinewa Min. Co.* v. *Andrews* (1899), 22 Ind. App. 523; *Goodwin* v. *Smith* (1880), 72 Ind. 113, 37 Am. Rep. 144; *Boulden* v. *McIntire* (1889), 119 Ind. 574, 12 Am. St. 453; *City of New Albany* v. *Endres* (1896), 143 Ind. 192; *Archibald* v. *Long* (1896), 144 Ind. 451; *Castle* v. *Bell* (1896), 145 Ind. 8; *Carmel Nat. Gas, etc., Co.* v. *Small* (1898), 150 Ind. 427.

The quantum of proof necessary to sustain such an allegation is stated in 1 Greenleaf, Evidence (16th ed.), §78, to be as follows: "Plenary proof on the part of the affirmant can hardly be expected; and therefore, it is considered sufficient if he offer such evidence as, in the absence of counter testimony, would afford ground for presuming that the allegation is true." The following authorities support this rule: *Thayer* v. *Viles* (1851), 23 Vt. 494; *United States* v. *Southern Colo. Coal, etc., Co.* (1883), 18 Fed. 273; *Phelps* v.

*Hughes* (1846), 1 La. Ann. 320; *King* v.. *Atkins* (1881), 33 La. Ann. 1057; *Information* v. *Oliver* (1884), 21 S. C. 318, 53 Am. Rep. 681; *Cole* v. *Cole* (1894), 153 Ill. 585; *Schmisseur* v. *Beatrie* (1893), 147 Ill. 210; *Barnes* v. *Barnes* (1894), 90 Iowa 282.

Consequently the evidence that Francis A. Benham separated from his first wife, Hannah, sometime in the year 1875, that he resided in Steuben county, Indiana, from May 20, 1875, until he removed to Elkhart county, where he resided until his death, that there was no record, either in Steuben, LaGrange or Elkhart· county, Indiana, of a divorce proceeding, with a decree thereupon, between decedent and his first wife, and that seven months after the performance of the marriage ceremony between decedent and Eliza A. Yeoman, said first wife procured a legal and valid divorce from him in Branch county, Michigan, where they resided at the time of the separation, was sufficient to entitle a jury to presume that decedent could not contract a lawful marriage with Eliza A. Yeoman at the time the ceremony was performed. Hence it was clearly a question for the jury to determine the fact whether decedent was divorced from his first wife at the time of entering into the marriage relationship with Eliza A. Yeoman.

In the case of *Davis* v. *Mercer Lumber Co.* (1905), 164 Ind. 413, at page 425, the court said: "It is a settled rule in this State that the right of the court to direct a verdict, as it did in this case, can only be upheld where, after a consideration of all the evidence most favorable to the plaintiff, together with all the reasonable and legitimate inferences which a jury might have drawn therefrom, it can be said that the evidence is clearly insufficient to establish one or more facts essential to the plaintiff's right of action." Citing *Purcell* v. *English* (1882), 86 Ind. 34, 44 Am. Rep. 255; *Gregory* v. *Cleveland, etc., R. Co.* (1887), 112 Ind. 385; *Wolfe* v. *McMillan* (1889), 117 Ind. 587; *Diezi* v. *Hammond*

*Co.* (1901), 156 Ind. 583; *Wagner* v. *Weyhe* (1905), 164
Ind. 177.

From the facts herein stated, it could not be said that the
evidence was insufficient to support such a finding.

Appellees further insist that, even if the marriage be-
tween Francis A. Benham and Eliza A. Yeoman was void in
its inception, their actions, conduct, cohabitation and
5.   repute raised an unrebutted presumption of a com-
mon-law marriage after the granting of said divorce.
Marriage is a status resulting from a contract to marry en-
tered into by a man and a woman capable of making such a
contract.   Cohabitation cannot of itself constitute marriage.
It can only be considered as evidence from which the pre-
sumption may be indulged that such a contract was entered
into.   Matters of conduct, reputation and actions are only
evidence to the same effect.   *Moore* v. *Heineke* (1898), 119
Ala. 627, 24 South. 374; *McKenna* v. *McKenna* (1899), 180
Ill. 577, 54 N. E. 641; *Norcross* v. *Norcross* (1892), 155 Mass.
425, 29 N. E. 506; *Clayton* v. *Wardell* (1850), 4 N. Y. 230;
26 Cyc., 889.

In this case, not only is such evidence present, but there
are the additional facts that, up to the time of her death,
Eliza A. Yeoman believed that she was the lawful wife
6.   of Francis A. Benham, by reason of the formal mar-
riage entered into, and that she had no knowledge of
the divorce obtained by his first wife after the last marriage
was consummated.   From these facts a jury might well find
that, in fact, no common-law marriage was ever entered into.
It would be justified in presuming that such relationship was
continued by Eliza A. Yeoman because of fraud and deceit
practiced upon her.

When the facts show that an apparently lawful marriage
was in fact an illicit relation in its beginning, the rule, as
quoted in *Williams* v. *Williams* (1879), 46 Wis. 464, at page
480, is:   " 'A cohabitation illicit in its origin is presumed to
be of that character, unless the contrary be proved, and

cannot be transformed into matrimony by evidence which falls short of establishing the fact of an actual contract of marriage. Such contract may be proved by circumstances, but they must be such as to exclude the inference or presumption that the former relation continued, and satisfactorily prove that it had been changed into that of actual matrimony by mutual consent.' [*Foster* v. *Hawley* (1876), 8 Hun 68.]''

In the same case, at page 478, the court said: ''It would require much less proof to satisfy either a court or jury that there was a marriage in fact between persons in good repute, and as to whom there was no obstacle to marriage, when the proof of marriage depended upon the fact of cohabitation as husband and wife, and the recognition of each other as such, than when it appeared affirmatively that one or both of the parties claiming a marriage, upon like proofs, were at the time of the commencement of the cohabitation incompetent to contract marriage. And this would be especially so, if it were shown that the party claiming such marriage had full knowledge, at the time of the commencement of such cohabitation, that he or she was incompetent to contract a lawful marriage with the other party. The fact appearing that such party unlawfully commenced the cohabitation, would be strong evidence that he or she would not hesitate to continue such unlawful conduct after the disability had been removed.''

The rule of presumption set forth is well supported. *Foster* v. *Hawley* (1876), 8 Hun 68; *Cartwright* v. *McGown* (1887), 121 Ill. 388, 12 N. E. 737, 2 Am. St. 105; *Spencer* v. *Pollock* (1892), 83 Wis. 215, 53 N. W. 490, 17 L. R. A. 848; *Appeal of Reading Fire Ins., etc., Co.* (1886), 113 Pa. St. 204, 6 Atl. 60, 57 Am. Rep. 448; *Hunt's Appeal* (1878), 86 Pa. St. 294; *Barnes* v. *Barnes* (1894), 90 Iowa 282, 57 N. W. 851; *Edelstein* v. *Brown* (1904), 35 Tex. Civ. App. 625, 80 S. W. 1027; *Williams* v. *Williams, supra.*

If Francis A. Benham had a former wife living, from

whom he had not been divorced at the time of entering into this apparent marriage relationship with said Eliza, such subsequent marriage was absolutely void. §8360 Burns 1908, §5325 R. S. 1881.

Was there evidence of any contract of marriage after the disqualification was removed? In the agreed statement of facts it is said: "Francis A. Benham and Eliza A. Yeoman, from the time of their marriage on November 15, 1882, lived and cohabitated together as husband and wife, and acted and conducted themselves as the same from that time until the time of her death, without regard to the divorce, she knowing nothing about the divorce."

The actions and conduct of the parties were the same subsequent to the granting of the divorce as prior thereto. Eliza A. Yeoman had no reason to think that a new contract was necessary, for the reason that her relationship with Francis A. Benham was due to a marriage entered into in the belief that it was a valid and subsisting marriage. Why should she be presumed to have done a thing the necessity of which had never been made known to her? But as for Francis A. Benham, it is an admitted fact that personal service was had on him in the bringing of the divorce action. The excuse of ignorance is not open to him, or those claiming through him. Yet, in the face of that knowledge, he continued his conduct and actions just the same as before. It would be a legitimate inference that he intended the relationship to continue the same as before the divorce. There was no overt act or expression on his part showing any change of the relation between himself and Eliza A. Yeoman, which flowed from the void contract of marriage.

The facts admitted are sufficient to warrant the presumption that no valid marriage was ever consummated between the parties to the ceremony, and therefore the court erred in directing a verdict for appellees.

The objection is also made that the court erred in refusing to grant appellants a change of venue.

The motion for change of venue was in two parts (1) Asking for a change from the county; (2) asking for a change from the judge. A rule of the Elkhart Circuit Court provided: "Applications for change of venue, not made until the cause has been once set for trial, will be granted only upon the discretion of the court, and upon such terms as it may deem best."

When a motion for a new trial has been sustained, the issues stand as though they had never been tried. The cause is to be tried *de novo*. It is then the duty of the court to proceed as in the first instance. Such proceedings would include setting the cause again for trial. If appellees' interpretation of the rule of court were followed, there would result a conflict with the statutory right to a change of judge when a cause is remanded for new trial by the Supreme or Appellate Courts of this State. §423 Burns 1908, Acts 1907, p. 85.

Therefore the rule must be construed as not applying to motions for change of venue made within due time after the cause has been remanded for new trial.

For these reasons the cause is reversed, with instructions to sustain the motion for a new trial, and for further proceedings not inconsistent with this opinion.

Judgment reversed.

Roby, J., absent.