[No. 15375.   Department One.   January 27, 1920.]

MINNIE BLODGETT, *Appellant*, v. MARY BLODGETT *et al.*,
*Respondents.*[1]

MARRIAGE (8, 11)—COHABITATION AND REPUTATION—PRESUMPTIONS —CONTINUANCE OF ILLEGALITY.   Residence and cohabitation in a state where common law marriages are recognized, after a former wife had obtained a divorce, does not legalize the prior void marriage of the husband or rebut the presumption of a continuance of the illicit relation, where neither of the parties knew of the divorce and their residence in such state was not permanent.

Appeal from an order of the superior court for Pierce county, Card, J., entered January 25, 1919, dismissing a petition for a new hearing, after granting an application for the removal of an executrix of an estate, upon sustaining demurrers to the petition. Affirmed.

*Carroll & Stewart*, for appellant.

*Jay C. Allen*, for respondents.

[1] Reported in 187 Pac. 340.

HOLCOMB, C. J.—On March 29, 1917, Alfred Blodgett died at Tacoma, Washington. He left no will, and on April 17, 1917, the appellant, claiming to be the widow of the deceased, was appointed administratrix of his estate. On September 10, 1917, the superior court for Pierce county, upon petition of respondent Mary Blodgett, mother of deceased, and after hearing upon the petition, entered a memorandum decision finding that appellant was never married to Alfred Blodgett; that, at the time appellant claims they were married, Alfred Blodgett was the legal husband of one Elsie Conahan; that there was no evidence that Alfred Blodgett and Elsie Conahan were ever divorced; that appellant knew that Alfred Blodgett could not legally marry; and that appellant had attempted to unlawfully dispose of the chief asset of the estate, and that it became the duty of the court to remove appellant as administratrix and appoint some person in her place; and the court thereupon appointed J. H. Gordon administrator *de bonis non.*

On March 14, 1918, appellant filed a petition for new hearing. The court, on April 17, 1918, sustained demurrers to this petition. On October 14, 1918, appellant filed an amended petition for new hearing. On October 15, 1918, the court sustained demurrers of Mary Blodgett and J. H. Gordon, administrator *de bonis non,* to this amended petition, and on January 25, 1919, entered an order dismissing the amended petition for a new hearing.

Passing the questions raised by respondents as to the right of appellant to an appeal, let us inquire into the allegations of the petition and amended petition for a new hearing. It appears from these that, on April 5, 1895, appellant and Alfred Blodgett went through the marriage ceremony as contracting parties, at Vancouver, B. C. At that time Elsie Conahan was

the living, undivorced wife of Alfred Blodgett. From April 5, 1895, to the time of the death of Alfred Blodgett, appellant and Alfred Blodgett lived together as husband and wife and held themselves out to the world as such. Most of this time was spent in the state of Washington, although for approximately twelve months of it, in three separate periods, they sojourned in the state of New York. Appellant alleges that, subsequent to the hearing and the order removing her as administratrix, she learned that the state of New York recognized and enforced common law marriages. She also alleges that, subsequent to her removal as administratrix, she learned that Elsie Conahan, in 1902, stated to acquaintances that she was, and claimed to be, divorced from Alfred Blodgett.

From all this, appellant seeks a rehearing on the theory, as we interpret her contentions, that, granting her marriage in British Columbia was void, the impediment to Alfred Blodgett entering into the marriage relation with her was removed in 1902 when Elsie Conahan was divorced from him; and when appellant and Alfred Blodgett, after 1902, lived in the state of New York as husband and wife, their relation passed from a meretricious one to a meritorious one, in that they became common law husband and wife, and having become husband and wife by common law in the state of New York, upon their return to this state, they continued in that lawful relation.

There is no allegation that, subsequent to 1902, when the impediment to the marriage of Alfred Blodgett to appellant was removed, a new contract of marriage was entered into by them. On April 5, 1895, Alfred Blodgett was totally incapable of entering the marriage relation with appellant and their relation was merely meretricious and unlawful.

The allegations of appellant's amended petition negative the fact that appellant, during the lifetime of Alfred Blodgett, had knowledge of the removal of the impediment to her marriage with him. There is nothing in her amended petition to show that he had such knowledge. If, then, neither of the parties were aware that they could lawfully enter into the marriage relation, or, expressing it differently, if both parties believed that their relation could not become a legal one, how then can the presumption of a continuance of the illicit relation be overcome? The fact that they could have entered into a lawful relation but did not, does not rebut the presumption of a continuance of illegality.

The mere fact that the parties at one time, when the impediment to their marriage may have been removed, lived in a state which recognizes common law marriages, does not change their relation. They still looked to the ineffectual ceremony at Vancouver as the beginning of their relation, and there is nothing in appellant's amended petition to show that they considered any other or a new beginning. Besides, their residence in New York was not alleged to be a permanent one, but the longest period of such residence was four and one-half months. In this respect the case is similar to the case of *Norcross v. Norcross,* 155 Mass. 425, 29 N. E. 506, wherein it was said:

"We are slow to believe that acts which in Massachusetts were illicit will be deemed matrimonial merely by being continued without any new sanction by residents of Massachusetts while transiently across the state line."

The case before us is stronger, in that here the record shows the parties knew their relation was illicit and believed it was incapable of being changed into a lawful one.

We have noted the cases cited by appellant holding that a meretricious relation may become matrimonial by the conduct of the parties evincing an intention to regard each other as husband and wife, but in the view we take of the case we do not regard them as having any bearing on the questions here involved.

The order of the superior court dismissing the amended petition is affirmed.

MITCHELL, PARKER, MACKINTOSH, and MAIN, JJ., concur.