MAE MEMMEN RIDDLE ET AL., APPELLANTS, V. PETERS TRUST COMPANY, TRUSTEE, A CORPORATION, ET AL., APPELLEES, CONSOLIDATED IN DISTRICT COURT WITH STATE OF NE- · BRASKA EX REL. DEPARTMENT OF TRADE AND COM- MERCE ET AL., PLAINTIFFS, V. PETERS TRUST COMPANY, A NEBRASKA CORPORATION, DEFENDANT.

24 N. W. 2d 434

FILED SEPTEMBER 25, 1946. No. 32095.

*Ziegler, Dunn & Becker,* for appellants.

*Finlayson, McKie & Kuhns* and *Cranny & Moore,* for appellees.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

YEAGER, J.

This action as it comes to this court at this time is based on an application by the First National Bank of Omaha, Nebraska, in a case wherein two previously pending actions were consolidated. The consolidated actions were titled and docketed as Mae Memmen Riddle, Lois Gumbel and Maxine Gumbel, Minors, by William E. Gumbel, their father and next friend, and Henry Oliver Memmen, Plaintiffs, v. Peters Trust Company, Trustee, a corporation, The Department of Trade and Commerce of the State of Nebraska, Defendants, Docket 261 No. 374, and State of Nebraska ex rel. Department of Trade and Commerce and C. A. Sorensen, Attorney General of the State of Nebraska, Plaintiffs, v. Peters Trust Company, a Nebraska corporation, Defendant, Docket 261 No. 196. By the decree in the consolidated actions the First National Bank of Omaha, Nebraska, became lawful trustee under the will of Tjark F. Memmen, deceased.

The application of the First National Bank of Omaha, Nebraska, in the present proceeding is for a judicial determination of the proper persons to whom the assets of the trust should be distributed.

On the one hand Mae M. Riddle, Maxine Gumbel Peters, and Lois Gumbel made claim, by proper response to the application, to the assets of the trust. On the other hand Margaret Memmen Loucks and Betty Memmen have by proper pleading made claim to the assets.

By its decree the district court awarded the assets of the trust, subject to costs, to Margaret Memmen Loucks and Betty Memmen. From this decree Mae M. Riddle, Maxine Gumbel Peters, and Lois Gumbel have appealed. They will be hereinafter referred to as appellants. Margaret Memmen Loucks and Betty Memmen will be referred to as appellees.

The substantial facts upon which the controversy here depends are the following: On July 24, 1916, Tjark F. Memmen of Lincoln, Nebraska, executed a will disposing of his estate. The second numbered paragraph of the will is as follows:

"I give, devise and bequeath to my eldest son, Henry Oliver Memmen a life estate in one hundred sixty (160) acres of land situated in Buffalo County Nebraska described as the Northwest Quarter (NW1/4) of Section Twenty-six (26), Township Nine (9) Range Fifteen (15) without the power to sell or to encumber the same in any manner during his lifetime. At his death it is my desire to and I so direct that said real estate shall to his surviving lawful issue if any, and if my said son shall die without lawful issue it is my desire and I so direct that said real estate shall be divided equally, that is to say share and share alike between my other children or their lawful issue."

By this paragraph it will be observed that Henry Oliver Memmen was devised a life estate in the real estate therein described with remainder to his lawful issue and for failure of lawful issue then in remainder to the other children of testator or their lawful issue.

On February 18, 1921, he executed a codicil the first numbered paragraph of which is the following: "My Daughter Marguerite Memmen who died on the 9th of Feb 1921 makes this necessary. Then haveing sold the Land that I gave devised and bequeathed to my Oldest Son Henry Oliver Memmen as described in my last and original will and Testement. I now instead of the Land give devise and bequeath To him the Sum of Twenty four Thousand Dollars ($24,000.00) as a Life Estate as set forth in the Orignal Will, the Intrest derived from the $24,000.00 To be paid him Semiannully." This provision of the codicil was a substitute for the quoted provision of the will and the parties are in accord on the proposition that the provision of the paragraph of the will with regard to the life estate of Henry Oliver Memmen and the remainder therein contemplated attaches likewise and with full force and effect to the quoted paragraph of the codicil.

In 1923, Tjark F. Memmen died and in due course his estate was probated. Peters Trust Company, a Nebraska corporation, became trustee of the life estate of Henry Oliver Memmen and later on the First National Bank of Omaha, Nebraska, became successor-trustee. The trust thereafter was duly and regularly administered by the successor-trustee until the death of Henry Oliver Memmen, which occurred on September 4, 1945.

After the death of Henry Oliver Memmen the appellees made claim against the trustee for the remainder of the trust estate as children and lawful issue of the said Henry Oliver Memmen.

The appellants asserted that the appellees were not lawful issue of Henry Oliver Memmen and were therefore not entitled to the remainder of the trust. Appellant Mae M. Riddle claimed a share as a child of Tjark F. Memmen, deceased, and the appellants Maxine Gumbel Peters and Lois Gumbel claimed a share as the lawful issue of a deceased child of the said Tjark F. Memmen.

The application herein of the First National Bank of Omaha, Nebraska, is to have this issue between the appellants and appellees determined. As hereinbefore indicated the issue thus presented was determined in favor of appellees. It was adjudged that appellees were the lawful issue of Henry Oliver Memmen and that the assets of the trust should be distributed to them share and share alike.

From the decree an appeal has been taken and appellants assign as error (1) that the court erred in holding that Margaret Memmen Loucks and Betty Memmen were lawful issue of Henry Oliver Memmen, (2) that the court erred in refusing to allow witness Mae M. Riddle to testify to the family circumstances of the testator and the beneficiary, Henry Oliver Memmen, which facts were known to the testator at the time the will was drawn, and (3) that the court erred in refusing to grant a new trial.

The theory on which appellants base their contention that appellees are not lawful issue of Henry Oliver Memmen is that when appellees were born Henry Oliver Memmen and the mother of appellees were not husband and wife. The mother of the two children is Minna Memmen and the evidence shows without contradiction that Henry Oliver Memmen was the father.

The theory or theories on which the appellees contend that they are lawful issue of Henry Oliver Memmen are that Margaret Memmen Loucks, if it be found that she was born out of wedlock, was legally adopted by Henry Oliver Memmen agreeable to the laws of the State of California and other states and by virtue of the laws of that state and other states became the lawful issue of Henry Oliver Memmen, also that prior to the birth of the said Margaret Memmen Loucks a valid and legally binding common-law marriage had been consummated between Henry Oliver and Minna in the State of Idaho and that she was the lawful issue of this marriage. As to Betty Memmen it is contended that she is the lawful issue of the common-law marriage in Idaho and that if no such marriage was consum-

mated in that state then such a marriage was consummated in Nevada, Nebraska, Kansas, Oklahoma, Texas, Iowa, or Colorado, in which states Henry Oliver and Minna sojourned prior to her birth.

The evidence clearly discloses that no legally recognizable ceremonial marriage was ever contracted between these parties. It is true that on May 1, 1916, a marriage ceremony purporting to unite them in marriage was performed at Bakersfield, California, but it was at a time when Minna was under disability because of the existence of a previous marriage. No license was issued after this disability was removed and no ceremony performed. This disability appears to have been removed by a decree of divorce entered June 25, 1917.

Margaret Memmen Loucks was born at Ventura, California, on December 26, 1918. Betty Memmen was born at Lawton, Oklahoma, December 8, 1924.

The evidence clearly discloses that from May 1, 1916, the date of the pretended marriage at Bakersfield, California, for many years continuously thereafter Henry Oliver and Minna lived together and traveled and worked together as man and wife. They always thereafter held themselves out as man and wife. After the children were born they traveled with them and were held out as their children. Neither of them has ever repudiated or attempted to disclaim the existence of the relationship of husband and wife. In fact, as late as 1930 in a divorce proceeding wherein Minna obtained a decree of divorce from Henry Oliver both parties affirmatively recognized the previous relationship as that of husband and wife and that the appellees herein were children of that relationship.

The facts upon which the contention that Margaret Memmen Loucks is the lawful issue of Henry Oliver Memmen depends are that she was born in the home of Henry Oliver and Minna at Ventura, California, where all three lived and remained for three or four months; that from the date of birth henceforth Henry Oliver recognized her as his child

and kept and maintained her, wherever he and Minna went, as his child.

The facts upon which the question of whether or not a common-law marriage had been contracted prior to the birth of Margaret Memmen Loucks are the following: Sometime after the pretended marriage in Bakersfield, California, Henry Oliver and Minna left California. The date of departure is not made certain by the record. They were engaged in the theatrical business. In any event in 1917 and into 1918 they moved about in the states of Oregon, Washington, and Idaho. Idaho was a state in which common-law marriages were recognized as legal, valid, and binding agreements. Whether or not the legal disability of Minna to remarry had been removed when the parties were in Idaho during this period cannot be ascertained from the record.

The facts upon which the question of whether or not Betty Memmen is the child of a common-law marriage are that after the disability against remarriage of Minna had been removed and before the birth of Betty, Henry Oliver and Minna sojourned in at least seven states wherein common-law marriages were recognized. These facts stand without dispute.

From the record it appears that Nevada was probably the first of the states recognizing common-law marriages. The others were Idaho, Kansas, Oklahoma, Texas, Colorado, and Iowa. In each and all of these states Henry Oliver and Minna lived together as man and wife and held themselves out in every way as man and wife. There is, however, no evidence that there was a specific mutual declaration between the two to be and become man and wife in any of them.

It may be well to interpolate here that it is urged by appellants that Henry Oliver was disabled from entering into a valid marriage with Minna on account of a previous marriage, but on the record this contention must be disre-

garded. There is no competent evidence or evidence of probative value to support it.

Coming first to a consideration of the question of whether or not Margaret Memmen Loucks was the child of a valid common-law marriage, we conclude that the evidence is insufficient upon which to base a finding that a common-law marriage was contracted in the State of Idaho after the disability of Minna was removed and before the birth of Margaret Memmen Loucks. The record does not disclose with any degree of certainty when in 1917 or 1918 the parties were in that state.

To sustain the contention that she is the lawful issue of Henry Oliver by adoption appellees rely in their pleadings and proof on the laws of California. The rule applicable under these circumstances is that the law of the domicile of the parties governs as to the creation of the status of a child by adoption, and if under the law of the place having jurisdiction there has been a valid adoption, the status arising therefrom will be recognized elsewhere provided the status is not contrary to positive law and public policy of the place where its recognition is sought. See 12 C. J., Conflict of Laws, § 46. p. 459; 15 C. J. S., Conflict of Laws, § 14, p. 913; Shick v. Howe, 137 Iowa 249, 114 N. W. 916; Mott v. First Nat. Bank of St. Petersburg, 98 Fla. 444, 124 So. 36; McNamara v. McNamara, 303 Ill. 191, 135 N. E. 410; Brewer v. Browning, 115 Miss. 358, 76 So. 267.

It has not been pleaded or suggested in the briefs that a recognition of the validity of the adoption of Margaret Memmen Loucks agreeable to the laws of California would be contrary to the positive law or the public policy of this state.

The provision of the California statutes upon which appellees rely to sustain the contention of lawful issue by adoption is the following:

"The father of an illegitimate child, by publicly acknowledging it at his own, receiving it as such, with the consent

of his wife, if he is married, into his family, and otherwise treating it as if it were a legitimate child, thereby adopts it as such; and such child is thereupon deemed for all purposes legitimate from the time of its birth." Section 230, Div. 1, Part 3, Title 2, Chapter 2, Civil Code of the State of California, adopted March 21, 1872, with amendments.

That the attitude and conduct of Henry Oliver toward this child conformed to all of the requirements of this provision there can be no question. He repeatedly and always acknowledged her as his child; he received her as such from birth; he did so with the consent of the woman considered by him as his wife; he kept her constantly in the family that he maintained; and in every way he treated her as if she were a legitimate child.

Under the decisions of the courts of California in the light of the facts as disclosed by the record before us no conclusion is possible other than that Margaret Memmen Loucks must be deemed the legitimate child of Henry Oliver Memmen. See Wolf v. Gall, 32 Cal. App. 286, 163 P. 346; Blythe v. Ayres, 96 Cal. 532, 31 P. 915; Estate of Gird, 157 Cal. 534, 108 P. 499; Estate of Esposito, 57 Cal. App. 2d 859, 135 P. 2d 167; Estate of Skinner, 65 Cal. App. 2d 528, 151 P. 2d 31.

Was this legitimized child also the lawful issue of Henry Oliver Memmen?

The appellants contend that where the intent is 'not expressed or made clear extrinsic evidence is admissable to show, in the case of a will, the intent of the testator. Whether or not this contention is basicly sound we are not called upon to decide in this case. No competent evidence was offered which tended to furnish enlightenment in this respect. There was no evidence of any declaration of Tjark F. Memmen with respect to the term. The only offered evidence was with regard to knowledge which it was claimed Tjark F. Memmen had of Henry Oliver Memmen in his habits and practices with women. From such evidence, if it had been admitted, appellants contend that it

would have been proper for the court to assume that the term was used in a special or restricted sense. It is obvious that the intention of Tjark F. Memmen could not be ascertained from an examination of the claimed habits and practices of Henry Oliver Memmen. The offered evidence was properly excluded and this disposes of the second assignment of error adversely to appellants.

On the question then of whether or not a legitimized child may be classed as lawful issue where there is nothing to indicate that the term shall have a special or restricted meaning the opinion of courts in different jurisdictions is divided. On it this court has not previously spoken.

In New York it has been held that a child legitimized after birth may not be included in the term "lawful issue." Central Trust Co. v. Skillin, 154 App. Div. 227, 138 N. Y. S. 884. On the other hand, in Pennsylvania an opposite holding has been made. See Miller's Appeal, 52 Pa. 113; McGunnigle v. McKee, 77 Pa. 81, 18 Am. Rep. 428.

Without attempting to establish an all-inclusive definition of the term but only one which appears to meet the purposes of the California statute and the intention of the Legislature of that state in its enactment, we hold that under that statute and its application by the courts of that state Margaret Memmen Loucks became and is the lawful issue of Henry Oliver Memmen and is entitled to take under the will of Tjark F. Memmen.

Reverting now to the question of whether or not Betty Memmen was the child of a common-law marriage and as such is recognizable as the legitimate child and lawful issue of Henry Oliver Memmen we direct our consideration to the laws of Nevada which were pleaded and proved by the appellees. As pointed out earlier it is probable that this was the first state in which Henry Oliver and Minna sojourned which recognized common-law marriages after there was a certainty of removal of disability against remarriage by Minna.

At that time Nevada did recognize common-law marriages and also that children of such marriages were legitimate. Parker v. De Bernardi, 40 Nev. 361, 164 P. 645.

If a marriage was contracted validly under the laws of that state such marriage would be recognized as valid under the laws of this state. This court in Forshay v. Johnston, 144 Neb. 525, 13 N. W. 2d 873, adopted the following from 38 C. J., Marriage, § 3, p. 1276: "The general rule is that the validity of a marriage is determined by the law of that place where it was contracted; if valid there it will be held valid everywhere, and conversely if invalid by the lex loci contractus, it will be held invalid wherever the question may arise." There is no fact, circumstance, or legal situation presented by the record here which would remove this case from the operation of this general rule.

The opinion in the case of Parker v. De Bernardi, *supra,* contains a determination of the existence of legitimate common-law marriage. It also contains an able and exhaustive discussion of the elements constituting such a marriage and outlines the character and quality of evidence necessary to establish it. From the opinion we quote the following: "We think a correct statement of the rule to be that, where the cohabitation was illicit or meretricious in the beginning, the burden of proof is upon those asserting a valid marriage, nevertheless there is no presumption that the relationship continued to be illicit. It is a matter of proof, and not of presumption, whether the relationship continued to be illicit, or whether it was changed to a legal and moral status; and the only presumption to be indulged in such matters is in favor of the legitimacy of the relationship. Moreover, we are of the opinion, in the light of what we deem the weight of recent authority, that the rule would be more correctly stated to say that, although cohabitation between a man and woman was in the first instance illicit or meretricious, a valid marriage under the common law may be shown by proof that the parties sustained toward

each other the relation of husband and wife after the impediment to their marriage had been removed."

The contentions of appellees bring this case strictly within this rule except that there is nothing to indicate that the relationship here was meretricious. It was only illicit for a time. The trial court was amply justified in finding that under the evidence and within this rule the appellees had sustained the burden of proving the existence of a common-law marriage for more than four years before the birth of Betty Memmen.

The determination herein that Margaret Memmen Loucks was the adopted child and lawful issue of Henry Oliver Memmen agreeable to the laws of California and that Betty Memmen was the child of a valid common-law marriage contracted agreeable to the laws of Nevada renders unnecessary a discussion of their adoption or legitimacy under the laws of the other states mentioned.

We hold, therefore, that Betty Memmen was and is the legitimate child and lawful issue of Henry Oliver Memmen and is entitled to take as such under the will of Tjark F. Memmen.

The trial court not having erred in the rejection of the evidence of Mae M. Riddle as charged in the second assignment of error, and having correctly decided the issue challenged by the first assignment, it follows that there was no error in the refusal to grant a new trial.

The decree of the district court is therefore affirmed.

AFFIRMED.