In re Estate of Gardner R. Binger, deceased. Eva Binger et al., appellees, v. Ralph D. Binger et al., appellants.

63 N. W. 2d 784

Filed March 26, 1954. No. 33487.

*D. O. Dwyer* and *W. L. Dwyer,* for appellants.

*Smith & Lebens, Sam C. Zimmerman, Cline, Williams, Wright & Johnson, Harold Elliott,* and *Van Pelt, Marti & O'Gara,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

The question for decision in this case is whether or not Eva J. Binger, hereinafter called plaintiff, was the surviving widow of Gardner R. Binger, hereinafter called decedent, who died intestate April 9, 1952. The issue arose in the administration of decedent's estate. Separate petitions for determination of heirship were filed therein by the administrator and by plaintiff who claimed that she was decedent's common-law wife by virtue of the laws of Colorado. Answer to the petition of plaintiff denying generally was filed by Ralph D. Binger, Leila I. Fernbaugh, and LaVerna Binger Bolz, the children of decedent and Lavina N. Binger, his wife, who died January 9, 1943. Such children will be hereinafter called defendants. Plaintiff and decedent had no children the issue of their alleged marriage.

After hearing upon appeal to the district court whereat voluminous evidence was adduced, that court rendered its judgment which, insofar as important here, reversed and set aside the judgment of the county court and found and adjudged that plaintiff was the surviving widow of decedent, entitled to share in his estate in accord with the laws of this state, and that his next of kin and sole heirs at law were plaintiff and defendants. Defendants' motion for new trial was overruled and they appealed, assigning that the judgment was contrary to the evidence and law. We sustain that assignment.

The pertinent facts are not in dispute. Plaintiff, a trained businesswoman of intelligence and ability, lived in Omaha, Nebraska. Decedent was an unmarried busi-

nessman who lived in Weeping Water, Nebraska. Plaintiff met him there in April 1943, while she was visiting friends over the week-end. Subsequently, by prearrangement, he called upon plaintiff several times at her home in Omaha. She was then married to one Henry A. Grieb who was still living at the time of this trial.

On August 2, 1943, plaintiff filed a petition for divorce from Henry A. Grieb in the district court of Douglas County. Service was had upon him and he entered a voluntary appearance. Thereafter, on September 17, 1943, plaintiff was granted a decree of absolute divorce. It awarded her the custody of their two sons, 17 and 15 years of age, together with an allowance of $50 a month, of which $25 was alimony and $25 was for the support of their youngest child. Such payments were required to be made until he reached the age of 21 years. In that connection, only the older son subsequently survived. Plaintiff was also awarded a home belonging to the parties in Omaha, and the proceeds from the sale of a 1937 Nash sedan with which to pay court costs and legal expenses. The decree concluded with this statement: "This Decree shall not become final, except for purposes of appeal, until six (6) months from date hereof. Dated at Omaha, Nebraska, this 17th day of September, 1943."

There is no direct evidence that decedent ever knew of such divorce decree, but it may be reasonably inferred that he did know about it. Nevertheless, plaintiff and decedent continued their associations and during the first part of October 1943, he proposed marriage and she accepted. He bought her a wedding ring and on October 29, 1943, they drove to Kansas City, Missouri. There they obtained a marriage license and had a marriage ceremony performed by a justice of the peace. In the application for such marriage license decedent, as Ralph G. Binger instead of Gardner R. Binger, subscribed and swore upon oath that he was "Ralph G. Binger of Lincoln, County of Lancaster and State of

Nebr," and that plaintiff was "Eva J. Grieb of Cushing, County of Howard and State of Nebr," and that they were both over 21 years of age, single, unmarried, and might lawfully contract and be joined in marriage. Attached thereto also was the affidavit of plaintiff stating that she was the person named in such application and that she was over 21 years of age, single, unmarried, and might lawfully contract and be joined in marriage. In that connection, it will be observed that at that time plaintiff lived in Omaha, Douglas County, Nebraska, that decedent lived in Weeping Water, Cass County, Nebraska, and that plaintiff had only been divorced 42 days. Thus, she was yet the wife of Henry A. Grieb who was still living, and she could not lawfully have contracted a marriage with anyone. As a matter of fact, such marriage to decedent was void, and no contention is made here that it ever had any legality. It should be noted that there is no explanation or reason given for their purported marriage in Missouri except that they knowingly attempted thereby to circumvent the laws of Nebraska.

After the marriage ceremony aforesaid, they registered at a hotel in Kansas City as Mr. and Mrs. Binger, and there cohabited as husband and wife. They left the next day for Weeping Water, thence to Omaha where they stayed in plaintiff's home over the week-end. Plaintiff continued to work for a short time in Omaha, after which she moved to Weeping Water and continuously thereafter resided in decedent's home where they cohabited and held themselves out as husband and wife until his death occurred. While there she assisted decedent in his business venture, and at the time of this trial was still assisting the administrator of decedent's estate in the operation thereof. There never was any marriage ceremony performed as required by law after the removal of plaintiff's disability.

Since 1923 and the effective enactment of what is now section 42-104, R. R. S. 1943, common-law marriages in

this state have not been recognized as having any validity. Ragan v. Ragan, *ante* p. 51, 62 N. W. 2d 121. Therefore, the ceremony in Kansas City gave their purported marriage no validity, and the mere fact that both before and after plaintiff's legal impediment had been removed they continued to reside and cohabit in Nebraska as husband and wife and hold themselves out in this state as such could give their marriage no validity either by statute or at common law. Collins v. Hoag & Rollins, 122 Neb. 805, 241 N. W. 766. In such situation, their relationship would be meretricious from its inception.

In that connection, however, plaintiff argued that after her legal impediment had been removed, there was a common-law marriage which we should recognize by virtue of the law and decisions of Colorado, concededly a common-law state.

That contention is predicated upon section 42-117, R. R. S. 1943, which provides: "All marriages contracted without this state, which would be valid by the laws of the country in which the same were contracted, shall be valid in all courts and places in this state." The question is then whether or not under the circumstances of this case there was any valid common-law marriage in Colorado, which this state should recognize. We conclude that there was not.

Plaintiff claims that there was a common-law marriage in Colorado because upon three pleasure trips respectively, one in October 1947, one in June 1950, and one in September 1951, she and decedent twice attended conventions and once visited relatives in Colorado for 3 or 4 days each trip. On such occasions they either registered at a named motel as husband and wife, or stayed with relatives, where they slept in the same bed, cohabited, and were introduced to or by friends and relatives as husband and wife, after which they returned to their home in Weeping Water. No claim is made that they ever actually resided or had a domicile in Colorado or in any other state except Nebraska.

There is no evidence that any of such trips to Colorado were made for the purpose of changing their domicile or residence to that jurisdiction or contracting a common-law marriage while they were in that state, or that while there any agreement was ever made by them to become husband and wife, or that they ever thought that such was necessary to give their marriage any validity.

As a matter of fact, plaintiff's own evidence discloses that neither she nor decedent during his lifetime ever thought of relying upon a common-law marriage. Plaintiff assumed to do so only after death of decedent, and the invalidity of their ceremonial marriage was discovered. It was simply an afterthought when necessity appeared, in order to share in decedent's estate. She testified on cross-examination that: "We considered we were married at all times. * * * from Kansas City on? A. Yes ma'am." Shortly after decedent's death she talked to the attorney for the administrator. In that respect, she testified: "Q And at the time that you talked to him you told him about this ceremonial marriage in Kansas City, didn't you? A. Because he asked me certain questions. Q. Yes, but you told him about it? A. After he had asked me the questions. Q At that time you didn't mention anything about these trips to Colorado constituting a common law marriage, did you? A Certainly not; I had other things to think about. Q But you didn't at that time, when you were telling Mr. Elliott about it, you didn't at that time claim that you were married by reason of any trips to Colorado, did you? A Well, we didn't—that was never discussed."

Generally speaking, a claim of common-law marriage, especially when one of the parties is dead, should be regarded with suspicion and closely scrutinized. Ordinarily, in such a case, in order to establish a common-law marriage, all the essential elements of such a relationship must be shown by clear, consistent, and convincing evidence. It is a contractual status in which

the state is interested as a party and the question of its existence must be determined from the facts and circumstances of each particular case. 55 C. J. S., Marriage, § 45, p. 911.

As provided in Colorado Statutes, Annotated, 1935, ch. 107, § 1, p. 55: "Marriage is considered in law a civil contract, to which consent of the parties is essential."

In Klipfel's Estate v. Klipfel, 41 Colo. 40, 92 P. 26, 124 Am. S. R. 96, quoting from Taylor v. Taylor, 10 Colo. App. 303, 50 P. 1049, it is said: " 'By the statutes of Colorado, marriage is declared to be a civil contract, and there is only one essential requirement to its validity between parties capable of contracting, viz: consent of the parties. * * * It follows, therefore, that a marriage contract between parties of contracting capacity which possesses the one essential prerequisite may be valid, although no provision of the statute as to its solemnization may have been followed or attempted. In other words, in this state a marriage simply by agreement of the parties, followed by cohabitation as husband and wife, and such other attendant circumstances as are necessary to constitute what is termed a common-law marriage, may be valid and binding. * * * It is also agreed that in cases where the contract or agreement is denied and cannot be shown, its existence may be proven by and presumed from evidence of cohabitation as husband and wife and general repute. Cohabitation as here used means something more than sexual intercourse.'

"Quoting from Yardley's Estate, 75 Pa. St. 211, the court further says: 'It is not a sojourn, nor a habit of visiting nor even remaining with for a time. None of these fall within the true idea of cohabitation as a fact presumptive of marriage. To cohabit is to live and dwell together, to have the same habitation, so that where one lives and dwells there does the other live and dwell with him.' "

The opinion also quoted the following with approval: "In Case v. Case, 17 Cal. 598, the court said: 'Cohabitation attended with other facts is merely a circumstance from which marriage in fact may be presumed, but where facts are proved from which a contrary presumption arises, all former evidence falls or at least is neutralized.'"

Such opinion also cited with approval numerous authorities, including Williams v. Williams, 46 Wis. 464, 1 N. W. 98, 32 Am. R. 722, wherein it is said: "Courts cannot but look with suspicion upon a claim of marriage founded upon evidence of cohabitation and conduct which is consistent with the fact of actual marriage, where the evidence affirmatively shows that at the time such cohabitation and conduct commenced, there was in fact no marriage, and that such cohabitation and conduct was meretricious and in violation of law. When such fact is shown, the effect of the evidence upon the question of a marriage in fact at the date of the commencement of such unlawful cohabitation and conduct, is entirely destroyed; and in order to establish a marriage subsequent to the commencement of such unlawful and meretricious conduct, by continued cohabitation, conduct and declarations of the parties, or by reputation, there should be some affirmative evidence showing that the subsequent relations of the parties were changed, and that that which was meretricious and unlawful in its commencement had been rendered lawful."

In Peters v. Peters, 73 Colo. 271, 215 P. 128, 33 A. L. R. 24, the court said: "The habit and repute of marriage are not an essential of the legality of the relationship but merely evidence of an essential, i. e. consent. Admitting the existence of the contract and its consummation, and the absence of habit and repute, the law will uphold the marriage relation. Admitting the habit and repute of marriage and the absence of consent and contract, the law will hold the relationship adulterous."

Ordinarily, in Colorado, continuous cohabitation and

holding themselves out as husband and wife by parties resident there, after the removal of an impediment to a ceremonial marriage entered into by them in good faith without any attempt to commit a wrong, raises a presumption of marriage. Poole v. The People, 24 Colo. 510, 52 P. 1025, 65 Am. S. R. 245; Mock v. Chaney, 36 Colo. 60, 87 P. 538; Davis v. People, 83 Colo. 295, 264 P. 658; Rocky Mountain Fuel Co. v. Reed, 110 Colo. 88, 130 P. 2d 1049; Clark v. Clark, 123 Colo. 285, 229 P. 2d 142.

Plaintiff relies upon the above cases, but they are all distinguishable. The parties therein all lived in and were bona fide residents of Colorado where as such they, in good faith, intending to be married, continuously cohabited, and held themselves out as husband and wife in that state for long periods of time. Here the parties, who were at all times bona fide residents of this state where common-law marriage is invalid, simply took short pleasure trips across the state line without ever intending to contract or contracting a common-law marriage in Colorado as required by its laws.

Allen v. Allen, 121 Neb. 635, 237 N. W. 662, relied upon by plaintiff, is also distinguishable. Plaintiff therein, whose husband disappeared and had not been heard from for 6 years, entered into a marriage ceremony with defendant in good faith in Colorado "where both plaintiff and defendant were then engaged in business, and were bona fide residents" after which concededly they cohabited and held themselves out to the world as husband and wife for 6 years. In such case we concluded that there was a valid marriage in Colorado.

Riddle v. Peters Trust Co., 147 Neb. 578, 24 N. W. 2d 434, relied upon by plaintiff, is also distinguishable. That case involved the legitimacy of children of parties who had, in 1916, entered into a marriage ceremony in California when one of the parties was under legal disability because of marriage to another. However, then and after such impediment had been removed in 1917,

the parties, who were engaged in the theatrical business, continuously for many years lived, cohabited, and held themselves out as husband and wife in at least 7 states, including Colorado and Nevada which both recognized common-law marriages. In fact, as late as 1930 the mother of the children involved had obtained a divorce from the father, in which proceeding both parties had recognized their relationship as husband and wife, and that the children involved were the issue of that relationship. In such situation, we concluded that there was a valid marriage and sustained legitimacy of the children.

No case in Colorado or in this state comparable in vital or controlling respects with that at bar has been cited or found. However, there are a few comparable cases from other jurisdictions. For example, in Taegen v. Taegen, 61 N. Y. S. 2d 869, the parties were both bona fide residents of New York, where common-law marriages were invalid, as they are in this state. As in the case at bar, one of the parties still had a living, undivorced spouse, so they went to Maryland where a ceremonial marriage was performed, immediately after which they returned to New York where they lived together, cohabited as husband and wife, and were known to their friends and acquaintances as such for at least 8 years. Recognizing that the ceremonial marriage in Maryland was invalid, as the Kansas City marriage in this case was also invalid, the woman sought to establish that a common-law marriage occurred in New Jersey after the impediment to the ceremonial marriage had been removed by divorce. That contention was based upon the fact that upon three occasions, each of 3 or 4 days duration, they made visits to New Jersey, a common-law state. On two such occasions they stayed at hotels where they registered as man and wife and cohabited as such. On the other occasion, they visited a married couple, where the man introduced plaintiff as his wife.

In that connection, the court said: "There is not a

scintilla of evidence that on any of those visits to New Jersey, or at any other time or place other than as a part of the Maryland ceremony, Mary and Walter ever said to each other, in words or substance, that they thereby agreed to or did take each other as husband and wife; and that there was such a statement between them is rendered highly improbable by the fact that, wickedly or stupidly or too confidingly, each assumed that the Maryland ceremony constituted a valid marriage and no question as to the validity of such marriage ever was raised in their minds until discussion with lawyers took place in 1944, shortly before Mary brought her action for divorce. * * * Furthermore, as already stated, New York did not authorize such agreements at any of the times here involved, and therefore such agreement, even if found to have been made, would not result in a valid marriage unless it be found to have been made in New Jersey. Under the circumstances here disclosed I cannot find that any such agreement was made anywhere."

In Cruickshank v. Cruickshank, 82 N. Y. S. 2d 522, a male resident of New York, under disability for want of age which he misrepresented in order to obtain a marriage certificate, entered into a marriage ceremony with a divorcee in California. In a suit by his father to annul the marriage, the woman claimed that a valid common-law marriage resulted from an overnight stop-over in Texas where they registered at a hotel as man and wife, cohabited, and held themselves out to others as such. In the opinion it is said: "A common-law marriage may not be established in Texas by temporary visits or stop-overs in that state. The Court so held in Kelly v. Consolidated Underwriters, Tex. Civ. App. 1927, 300 S. W. 981. In the above case, after disposing of the above contention by the plaintiff, the Court did hold that a common-law marriage was entered into by Joe Kelly and Louisa Lane. This was, however, by virtue of a subsequent period of *actual residence by the*

*parties in Texas and not based on the periods of temporary stays in the State of Texas.* This latter holding was affirmed in Tex. Com. App. 1929, 15 S. W. 2d 229. (Italics supplied.)

"The sixteen hour stop-over in the State of Texas by Robert and Josephine Cruickshank was not of their choosing. Their holding themselves out as man and wife by so registering in a Texas hotel in which the rest of their party stayed for the night was by virtue of a ceremonial marriage performed in California. It was not an act which was intended to result in a new status—a common law marriage. * * * The presumption of law is that having been married in California their stay in Texas and their holding out as man and wife there was by virtue of that marriage, and it is unreasonable to say that the stop-over resulted in a common-law marriage or further 'substantiated' the prior marriage as contended by counsel for the defendant, Josephine M. Cruickshank. This Court therefore holds that no valid common-law marriage between Robert and Josephine resulted by reason of their acts at the time of the sixteen hour stop-over in the State of Texas."

In State ex rel. Smith v. Superior Court, 23 Wash. 2d 357, 161 P. 2d 188, the court said: "We concur in the view of the trial court that where parties cohabit illicitly in the state of their residence and who happen to temporarily sojourn—only a few days in the case at bar—in a state where common-law marriage is recognized, even if during those few days they hold themselves out as man and wife those parties cannot by that conduct alone become legally man and wife.

"Parties who live for years in illicit relationship in a state in which they were domiciled will not find themselves married to each other if they happen to sojourn for a short time and hold themselves out as man and wife in a state where common-law marriage is recognized."

In Norcross v. Norcross, 155 Mass. 425, 29 N. E. 506,

it is said:  "But there was no evidence that the parties while in New York entered into any contract of marriage between themselves.  The substance of what was proved is, that the parties, without being married, were living together as husband and wife in Massachusetts, and while doing so they twice went to New York together and continued in the same apparent relation, at one time for three days, and at another for one week. We have not been referred to any decision in New York which holds that these facts would either constitute marriage there, or afford a conclusive presumption of it; and we are slow to believe that acts which in Massachusetts were illicit will be deemed matrimonial merely by being continued without any new sanction by residents of Massachusetts while transiently across the State line.  Randlett v. Rice, 141 Mass. 385, 394."  See, also, Blodgett v. Blodgett, 109 Wash. 597, 187 P. 340; 35 Am. Jur., Marriage, § 227, p. 332.

As late as Ragan v. Ragan, *supra*, which involved a claim of common-law marriage, this court said:  "In order to establish mutuality of consent by conduct, the evidence must show that they cohabited as man and wife and held themselves out as man and wife *in the community of their residence*."  (Italics supplied.)

The authorities heretofore cited are perfectly logical, just, and controlling in the case at bar.  Under the circumstances appearing herein, this court does not believe that there was any common-law marriage in Colorado which we should recognize or give any validity.

For reasons heretofore stated, we conclude that plaintiff is not the surviving widow of decedent.  Therefore, the judgment of the trial court should be and hereby is reversed and the cause is remanded with directions to enter a judgment in conformity with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.