In re Estate of Collin L. Ragan, deceased. Lulu Jane Hedges Ragan, appellant, v. S. E. Ragan et al., appellees.

62 N. W. 2d 121

Filed January 22, 1954. No. 33417.

*Perry & Ginsburg* and *R. E. Lunner,* for appellant.

*Kirkpatrick & Dougherty* and *McKillip, Barth & Blevens,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is an action arising out of proceedings in the county court of York County for the administration of the estate of Collin L. Ragan, deceased, who died intestate. The issue is whether Lulu Jane Hedges was the common-law wife of the deceased and entitled to share in his estate by virtue of such relationship. The trial court found against Lulu Jane Hedges and she appeals.

Common-law marriages entered into since the enactment of section 42-104, R. R. S. 1943, are not recognized in this state. Scott v. Scott, 153 Neb. 906, 46 N. W. 2d 627, 23 A. L. R. 2d 1431. The statute had no retroactive aspects and common-law marriages entered into and consummated prior to the adoption of the act are valid. This court had many times held that if a man and woman, each competent to marry the other, agreed to become married, lived and cohabited together as husband and wife, and so held themselves out to the public, such acts constituted a valid marriage. Collins v. Hoag & Rollins, 122 Neb. 805, 241 N. W. 766; Forshay v. Johnston, 144 Neb. 525, 13 N. W. 2d 873. A common-law marriage is a status assumed by competent parties based on mutual consent whereby they undertake to each other the duties and obligations of husband and wife. It is not required that the mutual consent of the parties be expressed by any prescribed form of words. There must be evidence, however, that the parties consented to assume the status of husband and wife, al-

though no explicit verbal agreement was made. Consent may be expressed by conduct as effectively as by words, and proof of conduct is proof of consent. University of Michigan v. McGuckin, 64 Neb. 300, 89 N. W. 778. In order to establish mutuality of consent by conduct, the evidence must show that they cohabited as man and wife and held themselves out as man and wife in the community of their residence. Coad v. Coad, 87 Neb. 290, 127 N. W. 455; Wilson v. Wilson, 139 Neb. 153, 296 N. W. 766. Open cohabitation, between unmarried persons, although generally known, who do not hold themselves out as husband and wife, does not establish a common-law marriage. Coad v. Coad, *supra;* Moore v. Flack, 77 Neb. 52, 108 N. W. 143. The facts will be discussed with these principles of law in mind.

The evidence shows that Lulu Jane Hedges was employed by the parents of Collin L. Ragan at Utica for 2 or 3 months in 1906. She became acquainted with Ragan at that time and he immediately commenced courting her. In the year 1907 he placed a ring on the finger of Lulu Jane Hedges and she inquired if that meant she belonged to him. She quotes his answer as "you take it as you want to." Lulu testifies that they commenced having sexual relations shortly thereafter. In 1908 they went to Lincoln where they lived in a hotel for 2 or 3 months. Thereafter they went to Denver, Colorado, where they lived at a hotel for more than 3 months. They returned to Lincoln where Lulu ran a rooming house, Ragan maintaining his own place of abode. The evidence is not clear as to how long they lived in Lincoln, but it appears that after 7 or 8 years they went back to their original homes. Ragan lived with his mother and Lulu rented various places to live during their stay. She claims that Ragan paid her rent, bought her necessaries of life, and came and went as he pleased, except that he returned to his mother's home each night. Ragan's mother died in 1924 and shortly thereafter he went to Omaha. Lulu Jane Hedges later

went to Omaha. It is evident that they lived together at times and at other times they lived apart. Ragan sought the company of other women on many occasions with knowledge and without protest on the part of Lulu. She says that Ragan supported her during this period. Ragan suffered a stroke in 1947 and both returned to York the following year. Lulu cared for Ragan the next 4 years until he died.

Lulu Jane Hedges testifies that she went under the name of Hedges until they returned to York in 1947. She testifies that she never introduced Ragan as her husband and that he never introduced her as his wife. She says that Ragan introduced her as Lulu or as his companion. He never introduced her as his wife. She generally introduced Ragan as her companion. She never introduced him as her husband.

The record shows that in 1925 or 1926 she employed legal counsel to bring a breach of promise suit against Ragan, which was amicably adjusted. She did not claim a marriage relationship at that time. The nature of the proposed suit indicated the contrary. Ragan sold a farm in 1946, the deed showing that he was a single person. Lulu was fully aware of this and during the negotiations for the sale introduced herself as Ragan's housekeeper. Out of the proceeds he bought her a home and the title was taken by her under the name of Lulu Jane Hedges. Lulu testifies that she never told any of Ragan's family that they were ever married, nor did she ever hear Ragan tell any of them that they were husband and wife. The record shows that Lulu Jane Hedges was asked this question: "Q. And there never has been so far as you are concerned any kind of an agreement between either you or Coll (Ragan) whereby you mutually agreed among yourselves to live as husband and wife prior to June, 1947; is that right? A. Yes." The record is replete with statements by Lulu that there was never any mutual consent of the parties to assume a marriage status prior to June 19, 1947.

The evidence will not support a finding that a common-law marriage existed prior to the enactment of section 42-104, R. R. S. 1943. The evidence of Lulu Jane Hedges is very conflicting on the question of continuing sexual intercourse between the parties over the years. Her testimony was also in serious conflict with that given by her in the county court. Assuming that Lulu and Ragan occupied the same bed over the years and purported when expedient to hold themselves out as husband and wife, it does not tend to establish a common-law marriage where the evidence affirmatively shows that there was never a mutual consent to assume the status of husband and wife. The evidence clearly shows the relationship of the parties to have been a meretricious one, lacking the primary aspect of a common-law marriage. The trial court properly so found and the judgment of the district court is in all respects correct.

AFFIRMED.