LAURA BOWMAN, APPELLANT, V. RAY BOWMAN, APPELLEE.

79 N. W. 2d 554

Filed December 7, 1956. No. 34035.

*William B. Quigley* and *Davis, Healey, Davies & Wilson,* for appellant.

*Evans & Evans,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

Appellee, who had been divorced because of his extreme cruelty toward appellant, seeks to modify the award of alimony made in the divorce decree on the grounds that his financial condition has been impaired since the decree; that appellant is able to support herself; and that she has been, as appellee asserts, living and cohabiting with Roy W. Mason and such conduct constitutes remarriage within the meaning of the decree terminating alimony on that contingency.

The parties, by their respective pleadings in the divorce case, asked the court, in the event a divorce was

awarded to appellant, to approve an agreement they had made in writing as a settlement of their property rights. The trial court sustained the petition of appellant, awarded her a divorce, approved the property settlement of the parties, and found and decreed that the property and income rights of the parties should be and were adjusted and determined in accordance with the property settlement of the parties which was made by incorporation therein a part of the decree. There was no appeal from that adjudication and it became final November 5, 1952. The pending proceedings were commenced on June 14, 1954.

The agreement of the parties recited that it was and should be, in the event of a divorce between them, approved by the court as a complete settlement of all their rights in the property then owned by them and as fair alimony to appellant; that described personal property was awarded to appellant as her separate and absolute property; that appellee should pay to appellant $100 per month alimony and support money commencing on the date of the agreement and continuing until the remarriage or death of appellant or the death of the appellee if he predeceased her; that appellant released all interest she had in the personal estate of appellee and all interest in any future-acquired property of appellee; and that appellee released all his interest in property then owned or subsequently acquired by appellant.

Appellant on May 15, 1954, filed a praecipe for the issuance of an execution against appellee for the collection of $900 alleged delinquent alimony payments. The petition of appellee to modify the divorce decree was filed June 14, 1954, and an amended petition was subsequently filed which contained the following statements:

The decree required appellee to pay appellant $100 per month until she contracted another marriage. She had been living and cohabiting with Roy W. Mason,

hereafter called Mason, as his wife. Appellee does not know whether they have contracted a legal marriage or whether they are consorting as man and wife without wedlock. It was the intention of the property settlement, made a part of the decree of divorce, that the $100 payment to appellant should continue only so long as she was unmarried. She is not dependent for support on appellee because of her association with Mason. The financial condition of appellee has changed since May 5, 1952, and he is unable to make the payments exacted by the decree. Appellant has good health, is an experienced cook and waitress, and is able to support herself.

The answer of appellant admitted the $100 per month awarded her was, by the terms of the decree, to continue until she remarried, denied the other allegations made by appellee, and alleged: That the claims of misconduct by her made by appellee were false and were intended by him to defame her character for the purpose of attempting to escape payment of the decreed and adjudicated alimony; that she, by her efforts during their marriage relationship, contributed materially to the accumulation of property by appellee; and that the property settlement approved by the decree represented her share of the family property and was in lieu of a lump sum award to her.

The proceedings at the hearing had of the matters presented by the pleadings consisted of testimony produced by appellee and findings by the court that appellant was living and cohabiting with Mason under circumstances which would constitute a common-law marriage if the same were permissible under the law of Nebraska; that the occurrence contemplated by the parties and set forth in the settlement agreement existed; and that the decree of divorce should be and it was modified to relieve appellee from payment of $100 per month to appellant from and after June 27, 1955. This appeal is from that order of the trial court.

The argument of appellee, that if a party moves to dismiss or demurs to the evidence of the other party at the close of the evidence, the question presented to the court for the purpose of the motion is whether or not the evidence is sufficient to sustain a judgment for the other party, is inapplicable to this appeal. If the district court had sustained the demurrer of the appellant to the evidence, the question for review would have been whether the evidence, with reasonable inferences therefrom, was or was not sufficient to have legally justified a decision for appellee. That is what occurred in the cases cited by appellee for his contention. In this case the demurrer of appellant to the evidence of appellee was denied. Appellant rested and a judgment in favor of appellee was rendered upon the entire record made at the trial. This appeal from the judgment must be tried de novo upon the record made at the trial. Peterson v. Peterson, 152 Neb. 571, 41 N. W. 2d 847; Holmes v. Holmes, 152 Neb. 556, 41 N. W. 2d 919; McNamee v. McNamee, 154 Neb. 212, 47 N. W. 2d 383; Schwarting v. Schwarting, 158 Neb. 99, 62 N. W. 2d 315.

An alimony award, unless it is an allowance of a definite sum in gross, may be modified as to future payments upon adequate showing of changed circumstances even though the award is, at least in part, a division of property of the parties accumulated during the marriage. A material change in the condition of the parties since the rendition of the decree of divorce is a prerequisite to such a modification. In Dunlap v. Dunlap, 145 Neb. 735, 18 N. W. 2d 51, it is said: "In the absence of such judgment (an unqualified allowance of alimony in gross) the court, upon proper petition and showing thereon, has power to revise and alter its awards of alimony as to future payments under the provisions of section 42-324, R. S. 1943. * * * The basis for changing such payments in the future must be founded upon new facts which have occurred since the decree was entered, and, in the absence of such facts, the matter is deemed to be

res adjudicata between the parties." See, also, § 42-324, R. R. S. 1943; McIlwain v. McIlwain, 135 Neb. 705, 283 N. W. 845; Morris v. Morris, 137 Neb. 660, 290 N. W. 720.

Appellee asserted as a basis of modification of the decree three things: That appellant was living and cohabiting with Mason as his wife but appellee did not know whether or not they had contracted a legal marriage and that by virtue thereof appellant was not dependent upon appellee for support; that the financial condition of appellee was impaired; and that appellant is experienced as a cook and waitress and able to support herself.

There was a total failure to establish that appellant was able to support herself. The reference to her employment as a waitress was made incidentally as a background for an answer to a question on an unrelated issue. It is more important, however, that by a declaration of appellee appellant was acting as a waitress at the time the divorce case was tried. It was a fact existing at the time of the decree and the fact therefore is res judicata in this proceeding. It is important also that there was a failure to prove or any attempt to show regularity of the engagement or the earnings appellant received. Consequently there was no basis in this respect for modification of the award of alimony. Morris v. Morris, *supra*. A further reason why any employment of appellant was not a reason for modification is that the monthly payments were, under the decree, a repayment to her for property and assets contributed to the marriage and accumulated thereto by her efforts and not solely a provision for support. Any evidence of her employment without competent proof of inability of appellee to respond to the financial requirements of the decree is not material in this proceeding for modification. Morris v. Morris, *supra*.

The claims of appellee that his financial condition has become materially unfavorable since the decree of di-

vorce was rendered and that he does not have money, property, or earning ability to meet the payments to appellant and because thereof they are unjust and inequitable are unimportant because there is no proof of the truth of any of them. Appellee was a witness at the hearing but he made no claim of a decline in his financial position after the decree of divorce was granted. There is no issue in this appeal of altered financial ability of appellee.

The record is certain that the basis on which the trial court modified the divorce decree was the charges of wrongful association of appellant with Mason. The evidence concerning this is all that appellee can rely upon to support his contention of changed circumstances since the divorce case was decided. The single basic issue is thus squarely presented. That issue is whether or not the acts attributed to appellant by the proof are sufficient to sustain the adjudication herein terminating the monthly alimony payments to appellant. The reason of the court for discontinuing alimony to her was that she was consorting with Mason "under circumstances which would constitute a common-law marriage" if such a marriage were permissible under the substantive law of the State of Nebraska and that this is equivalent to remarriage which, by the terms of the decree of divorce, is a ground for discontinuing alimony to appellant. These conclusions are each incorrect.

The finding of the district court herein that the contingency of remarriage of appellant, provided as a basis of terminating alimony to her, had occurred is without support by either pleading or proof. Appellee in his petition says that he does not know that appellant has married since the decree of divorce. He did not attempt to say in his testimony, neither did he produce any other evidence, that she had remarried. The making of a common-law marriage in this state is prohibited by section 42-104, R. R. S. 1943, which prohibition was enacted in 1923. Collins v. Hoag & Rollins, 122 Neb. 805,

241 N. W. 766; Scott v. Scott, 153 Neb. 906, 46 N. W. 2d 627, 23 A. L. R. 2d 1431; Ragan v. Ragan, 158 Neb. 51, 62 N. W. 2d 121; Binger v. Binger, 158 Neb. 444, 63 N. W. 2d 784.

The effect of the record is to deny that appellant has entered into a legally valid marital relationship since the decree of divorce and of course it cannot be correctly said that she has remarried. A provision for termination of alimony upon remarriage of the recipient requires a valid remarriage and the reason this is true is that it is unjust that a woman should have support or an equivalent from each of two men during the same period. This is well stated in 17 Am. Jur., Divorce and Separation, § 610, p. 475: "Aside from positive unseemliness, it is illogical and unreasonable that she should have the equivalent of an obligation for support by way of alimony from a former husband and an obligation from a present husband for an adequate support at the same time. It is her privilege to abandon the provision made by the decree of the court for her support under sanctions of the law for another provision for maintenance which she will obtain by a second marriage; and when she has done so, the law will require her to abide by her election since there is no reason why she should not do so." See, also, Sleicher v. Sleicher, 251 N. Y. 366, 167 N. E. 501; Gaines v. Jacobsen, 308 N. Y. 218, 124 N. E. 2d 290, 48 A. L. R. 2d 312.

The state has an interest in insisting that the legal obligation of the husband to pay alimony to his divorced wife is not improperly terminated and this is intensified when the divorce resulted from the fault of the husband and the payments, as in this case, represent, in whole or in part, repayment to the wife for her material contributions to the marriage and to the assets of the husband. The court said in Christiano v. Christiano, 131 Conn. 589, 41 A. 2d 779, 6 A. L. R. 2d 853: "* * * it is definitely recognized that the state has not only a social but a financial interest in making effective provisions

for alimony awarded a divorced wife. That interest grows out of the fact that the state or its subdivisions should not be called upon to make expenditures on account of a woman whose former husband, divorced for his misconduct, ought to support her."

The reason for the discontinuance of alimony allowance upon the recipient contracting another marriage is that, in that event, the legal obligation of the second husband supplants that of the first. There has been no marriage of anyone interested in this case capable of imputing a legal obligation to anyone but appellee. The law of the state that no marriage shall exist unless a license has been issued and a solemnization of marriage rites has been observed prevents a conclusion that the remarriage of appellant has occurred. The record is silent as to both of the conditions the law mandatorily exacts.

The trial court concluded that appellant was living and cohabiting with Mason under circumstances which would constitute a common-law marriage if the law of the state permitted such a marriage. This finding has no support in the record. An indispensable requisite of a common-law marriage is a mutual agreement presently to become man and wife between persons qualified under the law to make such a compact and it must contemplate a permanent marital relationship to the exclusion of all others. Abramson v. Abramson, 161 Neb. 782, 74 N. W. 2d 919. Evidence is entirely lacking of an agreement or mutual understanding between appellant and Mason to assume the present obligation of the status of husband and wife or that they mutually bound themselves permanently to whatever relationship they presently have. There is no proof that either of them considered herself or himself as having any interest in the property or affairs of the other which is incidental to a marriage relationship or that Mason contributed or does contribute to the support of appellant. A fair inference is that the sources of the support of appellant are the alimony pay-

ments, the amounts paid her by persons who room at her rooming house, and any remuneration she receives from work she does in a cafe.

A requirement of common-law marriage is that the parties must hold themselves out in the community where they live as husband and wife. Ragan v. Ragan, *supra*. The witnesses referred in their testimony invariably to Laura Bowman and Mason. None of them spoke of these persons as the Masons or Mr. and Mrs. Mason. Several times in the record it was testified that the rooming house was operated by Laura Bowman. There is nothing in the record that indicates that appellant and Mason introduced themselves or that they were introduced by others as husband and wife. Persons who testified to happenings intended to indicate that they had sustained intimate relationship were those who had an association with appellant close enough to be visitors in her home. This is not sufficient to indicate that they had the reputation of such relationship in the community. So far as the general community knew, appellant ran a rooming house in which Mason was one of the roomers. The testimony of the witnesses indicates that though they may have suspected improper relationship, they considered it to be meretricious rather than marital. Such an association is not consistent with the existence of a common-law marriage. Abramson v. Abramson, *supra*. The conclusion is irresistible that whatever the association of appellant and Mason was it was not marital.

Appellee asserts that the argument of appellant that she has no duty to her former husband of virtuous conduct different from that owed by her to the public is unrealistic and fantastic and he then inquires: Will a court of equity enforce an agreement for appellant that gives judicial approval and encouragement to the continuance of an offense against public morals? The implication of the latter is as erroneous as the assertion of the former. It is not the function of the court in this civil proceeding to attempt to serve as an agency for the moral re-

generation of appellant. The doctrine applicable and controlling under the circumstances of this case is that when an allowance has been made to a wife, neither she nor her husband has a right to complain of the subsequent conduct of the other. The failure of the wife to lead a chaste life affords no ground for depriving her of alimony as previously fixed and awarded nor does the failure of the husband to conduct himself properly afford a legal reason for increasing the award made to the wife. After a final divorce the wife has no duty to her former husband, the nonperformance of which will forfeit her right to the alimony granted her. A case on this subject often referred to is Cole v. Cole, 142 Ill. 19, 31 N. E. 109, 34 Am. S. R. 56, 19 L. R. A. 811. In the proceedings presented to that court an ex-husband sought modification of his alimony payments, charging that his ex-wife had been constantly guilty of acts of adultery and had led an immoral, unchaste, and adulterous life. The lower court sustained a demurrer to the petition for modification. The Supreme Court affirmed that action of the trial court. In deciding the case the court said: "In case of divorce the courts look at the standing of the parties, the conduct of each and from whence the estate is derived, and, having due regard to the living of each, will make such allowance to the wife as is reasonable and just. When the allowance has been thus made neither has the right to complain of the subsequent conduct of the other, and the failure of the wife to lead a chaste life will afford no ground for depriving her of her alimony as previously fixed, nor will the failure of the husband to conduct himself properly afford ground for increasing her allowance." It is further said in the decision of that case: "The question presented in this case therefore is, whether the adultery of the wife subsequently to divorce and allowance of alimony, as set forth in the petition, will authorize the interposition of the court to alter, modify or set aside the decree for alimony. The allowance was to the wife alone. It

appears by the original decree, which is in the record, that the divorce was granted at the suit of the wife, for the willful misconduct of the husband. * * * Conceding the general duty she owes society, what right does it give the husband to property justly hers, if she violates that duty? The husband owes a like duty to lead a moral and virtuous life. If he fails to perform it, could it be contended that it would give her a right to additional property, or that there should be an increase in her allowance in consequence? Manifestly not. In Forest v. Forest, 3 Bosw. 661, it is held, that after the divorce the wife owes no duty to the husband, and subsequent adultery is no cause for making a change in the allowance of alimony." See, also, Suozzo v. Suozzo, 16 N. J. Misc. 475, 1 A. 2d 930; Cariens v. Cariens, 50 W. Va. 113, 40 S. E. 335, 55 L. R. A. 930; Christiano v. Christiano, *supra;* Pauley v. Pauley, 280 Ky. 66, 132 S. W. 2d 512; Hayes v. Hayes, 220 N. Y. 596, 115 N. E. 1040; 17 Am. Jur., Divorce and Separation, § 652, p. 498; Keezer, Marriage and Divorce (3d ed.), § 658, p. 718.

The indulgence of living together and cohabiting by an unmarried man and a woman is a criminal offense but this is not a criminal case to protect the interest of society and the state in public morality and virtuous conduct. If it were, the accused would be entitled to all the safeguards of the criminal law. This is a civil proceeding by one who as a result of absolute divorce has no greater interest in the conduct of appellant than any other member of society and is not entitled to rely on any irregularity in her conduct, however grievous, to defeat his contractual and adjudicated obligation. It is not the province of appellee to attempt to protect the interests of society for his financial advantage. It is the exclusive prerogative of the sovereign to enforce its mandates for the protection of the public and its agencies and services therefor are abundantly sufficient. The conclusion is that appellee neither pleaded nor proved

a legal reason justifying a modification of the decree of divorce.

The trial court allowed the sum of $100 to be taxed as part of the costs to be paid by appellee as compensation of counsel for appellant. The services rendered by counsel for her as shown by the record are: Filing a praecipe for execution to enforce collection of delinquent payments of alimony in the sum of $900; filing a demurrer to the petition of appellee seeking modification of the decree; arguing and submitting demurrer to the petition; filing answer to the petition; filing praecipe for execution to collect delinquent installments of alimony in the sum of $500 and showing that appellee was in contempt of court because of his default and seeking the assistance of the court to compel payment; filing demurrer to amended petition of appellee for modification; attending to matters resulting from issuance of restraining order procured by appellee enjoining appellant from collecting the unpaid installments of alimony; arranging for the trial of right to an injunction at the time the petition for modification was heard by the court; securing order of court for payment to appellant of $100 each month until disposition of the proceedings to modify the decree; arguing demurrer to the amended petition of appellee; appearing in court and conducting hearing on behalf of appellant as to the issue of modification of decree of divorce; conducting proceedings necessary to appeal from the order of the trial court modifying the decree; and completing the appeal to this court. The services of counsel of appellant were rendered in the period from May 15, 1954, to March 30, 1956.

The amount allowed in such a situation should adequately compensate for the services performed. Specht v. Specht, 148 Neb. 325, 27 N. W. 2d 390. In deciding the amount to be allowed it is proper to consider the amount involved, the nature of the litigation, the time and effort required, the skill required, the responsibility

assumed, the diligence exhibited, the result obtained, the character and standing of the counsel, and the charge usually made for similar services. Lippincott v. Lippincott, 152 Neb. 374, 41 N. W. 2d 232. The allowance made by the district court is inadequate. It should be and is increased for services of counsel for appellant in the district court by the sum of $200 or to a total of $300 which should be and is directed to be taxed as costs in the district court and collected from appellee.

The judgment modifying the decree of divorce relieving and discharging appellee from paying alimony of $100 per month from and after June 27, 1955, should be and it is reversed and the cause is remanded with directions to the district court for Thomas County to dismiss the proceedings to modify the decree of divorce at the costs of appellee.

Appellant should be and she is allowed the sum of $300 as compensation of her counsel for services rendered in this court and it is ordered to be taxed as costs in this court and that all costs in this cause should be and are taxed to appellee.

REVERSED AND REMANDED WITH DIRECTIONS.