In re the MARRIAGE OF F. Robert WOODWARD, Jr., and Judith A. Woodward.

Upon the Petition of F. Robert WOODWARD, Jr., Appellant, and concerning Judith A. WOODWARD (now Judith A. Woodward Graves), Appellee.

No. 56642.

Supreme Court of Iowa.

May 21, 1975.

Rehearing Denied June 16, 1975.

Fuerste, Carew & Coyle, Dubuque, for appellant.

Alfred E. Hughes, Dubuque, for appellee.

Heard before MOORE, C. J., and MASON, LeGRAND, REES, and McCORMICK, JJ.

MASON, Justice.

This appeal arises from a controversy over whether periodic payments to the wife as provided for in a dissolution decree should terminate upon her remarriage. Implicit in this problem is whether the term "alimony" as used by the district court actually referred to a property settlement. Petitioner, F. Robert Woodward, Jr., is appellant and respondent, Judith A. Woodward, now Judith A. Woodward Graves, is appellee.

June 10, 1959, Robert and Judith were married in Dubuque, Iowa. Three children were born of the marriage, namely Frederick Robert, III, January 11, 1960; Mona Jeanne, June 20, 1961; and John Duncan, October 21, 1963. The trial court found Robert and Judith were both good parents.

The marriage was a prosperous one, and the parties acquired substantial property, including a home valued at $35,000, a summer cottage, two automobiles, a houseboat and small runabout, stocks in various companies and several life insurance policies. Robert, employed at a newspaper company, was earning approximately $42,000 gross income per year. Judith was not employed and had no particular skills.

Unfortunately, the marriage relationship crumbled and was dissolved June 1, 1971. In its original decree, the trial court awarded Judith the family home, furniture and adjacent grounds, free of debts and encumbrances, one of the automobiles, 225 shares of stock of the Dubuque Bank and Trust Company, and custody of the children.

Robert was ordered to assume the $11,000 debt on the family home and was awarded the remainder of the assets. The court further provided for the support of Judith and the children as follows:

"For the support of said children, Petitioner shall pay into the Clerk of the above-entitled Court for the use of Respondent the sum of $1,300.00 per month on the 10th day of each month commencing with the 10th day of June, 1971 and continuing monthly thereafter until the youngest child then living shall have attained the age of 18 years. Further, as each child completes secondary school education, jurisdiction is retained for the purpose of determining whether Petitioner shall, at such time, provide such child with post high school training.

"The foregoing payments of support money shall be deemed to include alimony, and upon the youngest then living child having attained his 18th birthday, such monthly installments shall be reduced to the sum of $300.00 and continue thereafter until Respondent remarries or dies whichever occurs first. If Respondent has remarried prior to said child having attained the age of 18 years, then all payments shall cease on said child's 18th birthday."

After the decree was initially entered, neither party appealed.

June 23, 1971, petitioner and respondent filed their "Motion for Enlargement or Amendment of Findings of the Court and Modification of Judgment." Basically, the parties desired a more definite recital of Robert's visitation rights and, more important, a finding as to what portion of the $1,300 per month was alimony. The latter request was related to the determination of alimony for income tax purposes.

June 25 the court amended its judgment and decree in relevant part as follows:

"As alimony and for the support of the children, Petitioner shall pay into the Clerk of the above-entitled Court for the use of Respondent, the sum of $1,300.00 per month on the 10th day of each month commencing with the 10th day of June, 1971 and continuing monthly thereafter until the youngest child then living shall have attained the age of 18 years. Further, as each child completes secondary school education, jurisdiction is retained for the purpose of determining whether Petitioner shall, at such time, provide such child with post-high school training. Of said $1,300.00 payment, $300.00 shall constitute alimony and $1,000.00 shall constitute support money.

"Upon the youngest child then living having attained his 18th birthday, such monthly installments shall be reduced to the sum of $300.00 and continue thereafter until Respondent remarries or dies whichever occurs first. If Respondent has remarried prior to said child having attained the age of 18 years, then all payments shall cease on said child having attained its 18th birthday."

Robert apparently paid the $1,300 monthly. However, Judith remarried June 2, 1973, and June 13 Robert applied to the same court for an order terminating the $300.00 monthly alimony payments.

Both parties appeared with counsel and the court issued its order July 7, which appears in pertinent part as follows:

"Examination of the Decree originally written discloses that the Court found that the Respondent's expenses in maintaining a family for herself and her three children were approximately $15,500.00 and consequently set the monthly payments at $1,300.00 or $15,600.00 per year. Further, the Court made findings of the accumulated properties of the parties together with those properties owned separately by Petitioner and found that the nature of the same was such that division in kind would not be practical. On the other hand, Petitioner's income, after taxes, was such that it did not seem practical that he could bear any alimony payments made in the way of property settlement in addition to the monthly payments of $1,300.00. For that reason the Court assigned an arbitrary figure of $300.00 to that portion of the monthly payments attributable to alimony. It was for the reason that Respondent seemed entitled, in equity, to more than the home, automobile, and bank stock that she received as her share of the accumulated property of the parties, that the Court assured her of $300.00 a month until the youngest child attained the age of 18 years under any circumstances.

"IT IS THEREFORE ORDERED that it is the Court's present interpretation of what was in the mind of the Court at the time of the entry of the Judgment and Decree that remarriage prior to the youngest child attaining the age of 18 years does not terminate the $300 alimony since the same, until that time, is in the nature of property distribution."

Robert appeals from this order and asserts the $300 should have terminated upon Judith's remarriage.

■ I. Since this is an equity case, the supreme court reviews the facts de novo. "Review of a decree granting dissolution of marriage, determining property rights and ordering alimony payments is de novo. It is our duty to examine the whole record and adjudicate rights anew on those propositions properly presented, provided issue has been raised and error, if any, is preserved in the course of the trial proceedings; while we give weight to the findings of the trial court, we will not abdicate our function as trier de novo on appeal. * * * [citing authority]." In Re Marriage of Novak, 220 N.W.2d 592, 597 (Iowa 1974).

The parties in this appeal do not question the propriety of the amount of alimony and child support or the property division, but simply Judith's continued right to receive the monthly $300 "alimony" after her remarriage to Dr. Graves.

Robert as appellant contends the provision in both the original decree and the

decree as modified on the joint application of the parties is an award for alimony and not a portion of a property settlement made in connection with a just and equitable division of the property of the parties. He maintains that although Judith's marriage to Graves did not automatically terminate her right to receive alimony from her former husband, her second marriage created a prima facie case for termination of her right to alimony from Robert, absent unusual circumstances.

Judith, on the other hand, maintains the financial provisions made for her in the original decree as modified constituted a portion of a property settlement even though such provisions were labeled "alimony"; thus such provisions cannot be modified in the absence of fraud, duress, coercion, mistake or other grounds as would justify the setting aside or changing a decree in any other case.

II. The first problem is the question of the trial court's intent in entering the dissolution decree requiring Robert to pay $1300 per month as alimony and for support of the children. Paragraphs 3 and 4 of the original decree as well as paragraphs 3 and 4 of the decree as modified June 25, 1971, have been set out earlier.

The court in its ruling on the joint application of the parties to enlarge or amend the findings of the court in the original decree "to cover specifically the matter of what, if any, portion of the $1,300.00 per month support money required under paragraph 3 of the Court's Judgment and Decree are or will be alimony, the parties being uncertain as to the tax consequences of such provisions, covered or alluded to in * * * paragraphs 3 and 4 of the Court's Judgment and Decree" declared "of said $1,300.00 payment, $300.00 shall constitute alimony and $1,000.00 shall constitute support money."

The modified decree did not specifically provide that the sum of $300 per month alimony due Judith should cease upon her remarriage prior to the youngest living child having attained his 18th birthday.

Robert's application of June 13, 1973, alleged Judith had remarried June 2, 1973. He asked the trial court to enter a decree establishing that his obligation to pay alimony to Judith ceased upon her remarriage.

Judith in answer admitted she had remarried but urged the court to continue the payments required of Robert in the sum of $1300 per month until the youngest living child attained his 18th birthday.

The court in interpreting its original decree expressed the view in its July 7 ruling the nature of the property accumulated by the parties during their marriage was such that division in kind would not be practical; Robert's income, after taxes, was such it did not seem practical he could bear any alimony payments made in the way of property settlement in addition to the $1300 monthly payments required of him in the original decree. The court expressed the further view Judith was entitled to more than the home, automobile and bank stocks she received and for that reason it was the court's intention to assure her the $300 a month payments until the youngest child attains the age of 18 years under any circumstances.

The court then concluded the $300 alimony payments should continue until the youngest living child attains the age of 18 in the nature of a property distribution.

In the matter before us the same judge who entered the original decree entered the June 25, 1971 modification decree and heard Robert's application for modification. Peters v. Peters, 214 N.W.2d 151, 157 (Iowa 1974), has this statement:

" * * * [W]e recognize the advantage a trial court has in interpreting its own prior decree. We have said a court's construction of its own decree is given great weight in determining what the decree means. * * * [citing authority]."

" 'A judgment is to be construed like other written instruments. The determinative factor is the intention of the court as gath-

ered from all parts of the judgment. Effect must be given to that which is *clearly implied* as well as to that which is expressed. * * * [citing authorities].'" (Emphasis supplied). Cooper v. Cooper, 158 N.W.2d 712, 713 (Iowa 1968). See also Dairyland, Inc. v. Jenison, 207 N.W.2d 753, 754 (Iowa 1973); Sound Storm Ent., Inc. v. Keefe In and For Fayette Cty., 209 N.W.2d 560, 566 (Iowa 1973); and Peters v. Peters, 214 N.W.2d at 157.

"A decree in equity is to be given construction in the light of the circumstances appearing of record under which it was entered.

" 'It will be construed and restricted in accordance with the pleadings and even with reference to other parts of the record.' * * * [citing authority]." Hargrave v. City of Keokuk, 208 Iowa 559, 562–563, 223 N.W. 274, 276.

In order to resolve Judith's contention set out in division I, supra, that the financial provisions made for her in the original decree as modified constituted a portion of a property settlement even though such provisions were labeled "alimony," it is necessary to discuss the meaning of the terms "alimony" and "property division." This problem was before this court in Knipfer v. Knipfer, 259 Iowa 347, 144 N.W.2d 140, where a stipulation dictated by the parties, not transcribed, not signed, filed or made a part of decree was involved.

In the course of the opinion the court said:

"The term 'alimony' has always had a technical signification, and, while in modern times, there have been many definitions of 'alimony' set out in the decisions of the courts, which differ more or less in details, they all agree that primarily alimony is an allowance to the wife from the husband for her support in a divorce action, in lieu of the legal obligation of the husband to support her * * *.

" *   *   *

"The doctrine of alimony is based upon the common law obligation of the husband to support his wife, which obligation is not removed by her obtaining a divorce for his misconduct." *Id.*, 259 Iowa at 352–353, 144 N.W.2d at 143.

However, simply because the term alimony is employed in a decree does not always dictate it is used in the sense set out above. "The term 'alimony' usually and technically means an allowance for wife support and is distinguishable from property settlement and child support. But it has been said that 'in a broader sense it covers an award made for the support of minor children' and 'is used in some instances to designate the amount allowed the divorced wife in settlement of property rights.' * * * [citing authority]." Brin v. Brin, 240 Iowa 659, 661, 37 N.W.2d 261, 262.

The fact the award was to be paid in installments rather than in a lump sum is immaterial. Farrand v. Farrand, 246 Iowa 488, 493, 67 N.W.2d 20, 23.

In other words, " * * * the trial court's employment of the term 'alimony' is not conclusive. It is not what the arrangement is called but what it is that fixes its legal status. It is the substance not the form which is controlling. * * * [citing authority]. If an order constitutes a property settlement as distinguished from alimony, its character is not affected by the name given it. * * * [citing authorities]." *Knipfer*, 259 Iowa at 351, 144 N.W.2d at 142–143.

Nevertheless, alimony and property division do have distinct meanings. " * * * Division of property has for its basis the wife's right to a just and equitable share of that property which has been accumulated by the parties as the result of their joint efforts during the years of the marriage to serve their mutual needs. * * * [citing authority]." *Knipfer*, 259 Iowa at 353, 144 N.W.2d at 143.

No single factor is controlling in determining whether a particular award constitutes alimony or a property division. All

relevant factors must be taken into consideration including the extent and nature of the property accumulated by the parties which the court is called upon to distribute in a just and equitable manner, the provisions of the original decree terminating the marital relationship, as well as the guidelines set out in Schantz v. Schantz, 163 N.W.2d 398, 405 (Iowa 1968), excluding consideration of reward or punishment on the basis of fault. In Re Marriage of Winter, 223 N.W.2d 165, 169 (Iowa 1974).

In its original decree the court made a finding that at the time of the dissolution Judith was unemployed and had no special skills. Obviously, the court felt some provision should be made for Judith's maintenance and support. The court also made a finding Judith's expenses in maintaining the family home for herself and the three children were, at the time, approximately $15,500 per year. The total amount awarded to meet these expenses was $15,600.

When consideration is given to the extent and value of the assets of the parties and the division made thereof by the court in the original decree, this court reaches the conclusion the provision for the periodic payment of $300 is alimony.

III. With the foregoing conclusion there still remains to be determined whether the $300 per month alimony should be continued notwithstanding Judith's remarriage. This seems particularly true in light of the provisions of the trial court's order from which this appeal arises.

There are two separate views as to the effect of remarriage on an alimony decree. One is that it automatically terminates alimony. The other is that remarriage does not ipso facto terminate alimony but ordinarily justifies an application for termination of alimony. In Myers v. Myers, 195 N.W.2d 113, 114 (Iowa 1972), this court recognized, "where no child support is involved a majority of jurisdictions hold a wife's remarriage does not in and of itself terminate her right to alimony. It does constitute a strong ground for termination of the alimony decreed. Annot., 48 A.L. R.2d 270, 283, Alimony—Effect of Remarriage."

This statement regarding the problem appears in Wolter v. Wolter, 183 Neb. 160, 158 N.W.2d 616, 619:

"The basic principle that supports both views is that it is against public policy that a woman should have support or its equivalent during the same period from each of two men. On this issue, this court said: ' "Aside from positive unseemliness, it is illogical and unreasonable that she should have the equivalent of an obligation for support by way of alimony from a former husband and an obligation from a present husband for an adequate support at the same time. It is her privilege to abandon the provision made by the decree of the court for her support under sanctions of the law for another provision for maintenance which she will obtain by a second marriage; and when she has done so, the law will require her to abide by her election since there is no reason why she should not do so." ' Bowman v. Bowman, 163 Neb. 336, 79 N.W.2d 554.

" * * * Even cases which adopt the automatic termination approach tend to concede that there may be exceptional circumstances under which alimony might be considered as continuing, or that, at least, judicial determination of the question as to whether it continues might be advisable. This is perhaps due to problems involved in the use of the term 'alimony' in decrees or orders as representing an allowance for support or property division or settlement, or both. For example, see comments in Bowman v. Bowman, supra, indicating that the alimony award represented, in whole or in part, repayment to the wife for her material contributions to the marriage and to the assets of the husband. Other courts have indicated concerns in the area of the validity of the remarriage, particularly where the mental capacity of the wife to contract the second marriage is in issue. The obvious result of an automatic termina-

tion would be that the court would lose all jurisdiction and the wife would have no judicial recourse, even though there were extraordinary equities."

In Myers v. Myers, 195 N.W.2d at 114, after noting the conclusion reached by the majority of jurisdictions appears to be well supported by the cases, this court stated, "We agree."

Cases from other jurisdictions supporting the rule recognized in Myers v. Myers are collected in the annotation in 48 A.L.R.2d 270 and in the Later Case Service for that volume.

■ We now hold the remarriage of a woman whose previous marriage has been terminated in a dissolution of marriage proceeding does not of itself terminate her right to alimony but it does make out a prima facie case which requires the court to end it, in the absence of proof of some extraordinary circumstances justifying its continuance.

■ Robert made out a prima facie case for termination of the $300 monthly payments. In our de novo review we fail to find any extraordinary circumstances justifying continuance of these payments.

The present case does not present the factual circumstances before the court in Peters v. Peters, 214 N.W.2d 151. In that connection see Annot., 45 A.L.R.3d 1033.

IV. On remand the trial court shall set aside its order of July 7, 1973, and provide for the termination of $300 monthly payments required of Robert as of the date the procedendo is issued in this matter. See Siver v. Shebetka, 245 Iowa 965, 968–969, 65 N.W.2d 173, 175.

The costs on this appeal shall be taxed to the appellee, now Judith A. Woodward Graves.

With directions to the trial court the case is therefore

Reversed and remanded.