**In re the MARRIAGE OF Carl Franz ORGREN and Bonnie Marie Orgren.**

**Upon the Petition of Carl Franz Orgren, Petitioner-Appellee,**

**And Concerning Bonnie Marie Orgren, Respondent-Appellant.**

No. 84–1297.

Court of Appeals of Iowa.

Aug. 29, 1985.

ter's degrees and a doctorate in library science. Bonnie, a high school graduate, was primarily a housewife and mother to the parties' three children, all of whom are now adults.

At the time of the trial, Carl was 47 years old and Bonnie was 44. Bonnie was a junior in college with aspirations to obtain a master's degree in social work. She experienced some residual health problems as a result of a 1968 automobile accident. She goes through periods of two or three days where she is virtually unable to function due to severe head, neck and back pains. Carl is a tenured associate professor and chairman of the University of Iowa department of library science. His financial statement showed an annual gross income of $42,720 while he testified at trial that his "base salary" was $34,954.

The agreement of the parties concerning division of personal property, bank accounts, and Carl's retirement fund was incorporated into the dissolution decree. Their remaining major asset, a home in which they had an equity of approximately $60,000 was awarded to Carl subject to the remaining indebtedness. Bonnie was awarded a cash settlement of $17,302 payable in monthly installments of $250 or more per month at 10% interest. In computing the amount of the settlement, the trial court treated as marital debts obligations of approximately $15,000 owed to Carl's parents and approximately $2,450 owed to the parties' youngest daughter.

Bonnie was awarded alimony of $400 per month from August 1, 1984 through June 1986, terminable only upon her death.

One of the factors which the trial court weighed heavily in limiting the duration of the alimony award was its determination of a "de facto marriage" between Bonnie and Larry Frye. Larry testified at trial that he was a carpenter-laborer-sculptor with a 1983 income of only $5,500.

The trial court also awarded Bonnie $500 in attorney fees.

Bonnie has appealed from the dissolution decree. She challenges the alimony award,

Sharon A. Mellon, of Mellon & Spies, Iowa City, for respondent-appellant.

Daniel L. Bray, Iowa City, for petitioner-appellee.

Considered by OXBERGER, C.J., and SNELL and HAYDEN, JJ.

SNELL, Judge.

The parties were married in 1958. During the next twelve years Carl worked at various jobs while completing his undergraduate education and obtaining two mas-

the property division, and the provision for attorney fees. Bonnie also requests attorney fees on appeal.

Our review is de novo. *In re Marriage of Deck*, 342 N.W.2d 892, 894 (Iowa Ct.App. 1983). We give weight to the fact findings of the trial court, but are not bound by them. Iowa R.App.P. 14(f)(7).

**Alimony.** Bonnie contends that the duration and amount of the alimony award is insufficient. The criteria to be considered in awarding alimony have been codified in Iowa Code section 598.21(3). We briefly review some of the evidence in light of the most applicable of these criteria.

The parties were married for twenty-six years. During their marriage, Carl completed twelve years of higher education and gained considerable working experience in his field. Bonnie sacrificed a college education and job training to make a home and rear their children. Bonnie, in her mid-forties, is now pursuing her own career goals seeking a degree in social work.

Carl earned $40,600 in 1983; Bonnie earned nothing. Carl's employment with the university appears secure, his earnings have steadily increased over the years, and will continue in the future. If Bonnie completes her education as planned, she could have the capacity to earn $18,000 to $20,000 a year. However, we are aware that given her health problems and her age, Bonnie may have difficulty securing employment and could encounter setbacks when she enters the job market.

The trial court awarded Carl the home and furnishings, and freed Bonnie from the parties' substantial indebtedness. Bonnie also is to receive a one-half interest in Carl's retirement account, ten percent of which she may cash in and also receive a present annuity payment each month until she dies. Her share is $4,093.44. In addition, Bonnie will receive a monthly property settlement payment.

The question of alimony includes the issue of Bonnie's cohabitation with another man. Bonnie argues that any consideration of this relationship is impermissibly penalizing her for allegedly causing the marriage breakdown.

The remarriage of a woman whose previous marriage has been terminated in a dissolution proceeding does not of itself terminate her right to alimony. *In re Marriage of Woodward*, 229 N.W.2d 274, 280 (Iowa 1975). In fact, the continuation of alimony beyond remarriage is especially appropriate where its purpose is rehabilitative—to assist the payee in obtaining further education necessary to permit her to undertake a self-supporting career. *In re Marriage of Seidenfeld*, 241 N.W.2d 881, 884 (Iowa 1976). Although remarriage does not result in automatic termination of an alimony obligation, it does shift the burden to the recipient to show that extraordinary circumstances exist which require the continuation of the alimony payments. *Woodward*, 229 N.W.2d at 280. One extraordinary circumstance noted by the Iowa Supreme Court is the inability of a subsequent spouse to furnish support. *See In re Marriage of Shima*, 360 N.W.2d 827, 829 (Iowa 1985), citing *Dietrick v. Dietrick*, 99 N.J.Eq. 711, 134 A. 338 (1926).

We recognize that in making an alimony award, the fault of either party is not to be considered. *In re Marriage of Williams*, 199 N.W.2d 339, 345 (Iowa 1972). The key to whether alimony should be awarded is *support*. The issue of cohabitation is clearly a "relevant factor" within the meaning of section 598.21(3)(1), and may well affect Bonnie's need for support. The trial court found that because Bonnie was cohabiting with Larry Frye, who had proposed marriage, that a "de facto marriage" exists. Bonnie made no such concession and challenges this finding. While eschewing a specific finding of fault, the trial court waffled in and out of the subject matter in its discussion of alimony. In its findings the court stated:

> While the Court does not consider such evidence of fault or wrongdoing, it is the Court's conclusion that Bonnie decided to abandon and forego the marriage herein; that even after she moved out, Carl

would have had her back if she would have been willing to come back to the marriage.

In the decretal portion the court stated: In making this award, the Court has carefully considered the fact that the Respondent has chosen to voluntarily abandon this marriage and begin a relationship of cohabitation with another man. If she chooses to cohabit with Larry Frye in a relationship which appears to the Court to be a de facto marriage, then she in good conscience should look to Mr. Frye for any additional support needed, rather than to the Petitioner, her former husband. Frye is, in fact, the same as her husband except for the ceremony to make it legal. Allowing Respondent additional alimony from her former spouse is unfair to him and it is also unfair for the Respondent and Frye who live together as husband and wife to cast any additional burden of support upon Petitioner. If Frye wants the Respondent and all of the benefits of a marriage relationship except the "I do's" then he should be willing to assume any additional support needs of the Respondent and Respondent should be willing to look to him for such support.

■ Notwithstanding we agree with the moral principles espoused by the trial court, we believe that this focus became central to the alimony question thus diminishing the importance of whether Bonnie's need for support was affected. In limiting Bonnie's alimony support to less than two years after a twenty-six year marriage where she is unskilled and partially disabled, the moral principle may have subjugated the principle of support. That principle, founded on a need of the recipient, is also based on a recognition of contributions made by one spouse to the other's advancement. *In re Marriage of Janssen,* 348 N.W.2d 251, 254 (Iowa 1984).

■ We do not believe that cohabitation is a ground for automatic denial or limitation of alimony payments. Nor should it be when remarriage itself is not. However, Bonnie's financial status may be al-tered by the addition of another person with whom to share household expenses.

■ We, then, must determine Bonnie's need for support, taking into account her cohabitation with Larry. We find that Bonnie's relationship with Larry did not substantially alter her financial condition. In fact, the record reflects that Larry's financial contribution to Bonnie was zero. Larry's income for 1983 was only $5,500. Larry and Bonnie split living expenses equally.

In light of the length of the marriage, Bonnie's contributions of homemaking and child-rearing services throughout, and Carl's ability to pay, it is inequitable to limit the duration of alimony to less than a two-year period.

After weighing all of the competing considerations, we modify the alimony provision of the decree as follows: Carl shall pay the sum of $125 per week, retroactive to the date of the decree, to be reduced to $1 per year, five years from the date of the decree, or when she receives her master's degree, whichever event occurs first. These payments shall be a charge against Carl's estate should he die before the end of the five-year period, and his obligation to pay alimony shall not terminate if Bonnie remarries or cohabits with a person of the opposite sex unless lack of need is established. This increase will allow Bonnie sufficient time to complete her education and obtain gainful employment.

**Property Division.** Bonnie alleges that the trial court erred in deducting the debts to Carl's parents and their daughter in fixing Bonnie's property settlement cash award. Carl argues that his parents made two loans to the couple—one for $8,800 and one for $6,000. Carl claims that they also owe a debt of $2,473 to their daughter, Kirstin.

Iowa Code section 598.21(1) requires the court to equitably divide all property of the parties and lists criteria for consideration. Adjudicating property rights in a dissolution action inextricably involves a division between the parties of both their marital

assets and liabilities. *In re Marriage of Johnson,* 299 N.W.2d 466, 467 (Iowa 1980).

The parties' home was valued at $80,000. The trial court was aware that the $19,060 mortgage left an equity of $60,940. The court further reduced this by $32,335 of debts to reach a net worth figure of $28,605. The debts it deducted included the aforementioned family debts. The court, then, divided the equity, awarding Bonnie $17,302 payable at the rate of $250 or more per month at 10% interest. Bonnie also received a lien on the realty to this extent.

■ We find that the net equity should not have been reduced by the debts to Carl's parents and to the parties' daughter. A more equitable property division is due to Bonnie, which we find to be $30,000. That amount shall be paid by Carl to Bonnie at the rate of $250 per month, the unpaid balance accruing interest at the rate of ten percent per annum. The balance remaining unpaid shall be paid at such time as Kirstin completes her undergraduate college education or no longer lives full time as a single person in the family home. In any event, all remaining balances unpaid shall be paid within four years from the date of this decree.

Each of the parties shall be responsible for any debt to his or her parents. Carl shall pay Kirstin any debt owed to her by Carl or Bonnie.

**Attorney Fees.** Bonnie believes that Carl should be ordered to pay all of her attorney fees. The balance due to her attorney at the time of trial was $2,200. The trial court ordered Carl to pay $500 of these fees.

■ "Attorney fees are not recoverable as a matter of right, but rest within the court's discretion and depend upon one spouse's financial needs and the other spouse's ability to satisfy them." *In re Marriage of Estlund,* 344 N.W.2d 276, 281 (Iowa Ct.App.1983). Considering Carl's obligations under the decree, we believe the trial court's award is reasonable and should be affirmed.

■ In evaluating a request for attorney fees on appeal, the appellate court must consider the needs of the party making the request and the ability of the other party to pay. *In re Marriage of Castle,* 312 N.W.2d 147, 150 (Iowa Ct.App.1981). We order Carl to pay $1,000 of the attorney fees incurred by Bonnie on appeal.

AFFIRMED AS MODIFIED.